THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. KENNETH ROSS et al., Defendants-Appellants.

First District (5th Division)   Nos. 83—2495, 83—2496 cons.

Opinion filed December 6, 1985.

James J. Doherty, Public Defender, of Chicago (Mary T. Woodward, Assistant Public Defender, of counsel), for appellant Kenneth Ross.

Frederick F. Cohn and Robert G. Freeman, both of Chicago, for appellant Mark Mosley.

Richard M. Daley, State's Attorney, of Chicago (Phillip J. Bartolementi, Assistant State's Attorney, of counsel), for the People.

PRESIDING JUSTICE MEJDA* delivered the opinion of the court:

Defendants Kenneth Ross and Mark Mosley appeal from the judgments entered on jury verdicts convicting each of them of three counts of murder and one count of armed robbery. (Ill. Rev. Stat. 1983, ch. 38, pars. 9—1(a)(1), (2), (3), and par. 18—2.) Ross was sentenced to 40 years for murder and 30 years for armed robbery. Mosley received 35 years for murder and 30 years for armed robbery. On appeal, both defendants contend that their representation by the same attorney in a joint trial created a conflict of interest which denied them their sixth amendment right to effective legal representa-

---

*This opinion was authored and concurred in prior to the retirement of Presiding Justice Mejda from the court.

tion. Mosley additionally contends that he was denied his sixth amendment right of confrontation because he was unable to challenge pertinent portions of his codefendant's pretrial statement. We reverse both convictions and remand with directions.

On December 8, 1982, Ralph Kline was robbed and murdered after delivering a pizza at 2026 West 68th Place in Chicago. The investigating officer found Kline dead in the front seat of his car at approximately 8:30 p.m. on December 8. Kline's car was smashed into a parked vehicle at 2026 West 68th Place with the keys in the ignition. The State pathologist later testified that shotgun pellets were found in both the left side of Kline's neck and his right hand. The pathologist stated that death was caused by a shotgun wound and that there had been no evidence of other trauma.

The next day a Chicago police officer arrested Ross and questioned him concerning the events of the previous evening. Ross initially claimed that he had been asked to participate in the robbery of a pizza man but had declined. Later the same day, Ross admitted his participation in the robbery-murder, but claimed he had acted solely as a lookout. Ross thereupon gave police a statement describing the events of December 8, 1982. In his statement, Ross indicated that on December 8, he, Mosley, Antoine Brewer, and Tyrone Livingston were together and decided to rob a pizza man. (It was later demonstrated that Livingston had an ironclad alibi for the time in question and no charges were brought against him.) Ross stated that Brewer called a local restaurant and ordered the delivery of a pizza to the 2000 block of West 68th Street. The four then proceeded to West 68th Place and Hoyne Avenue to await the deliveryman. When no deliveryman appeared, Brewer again called the restaurant. Shortly thereafter, they observed Kline complete delivering a pizza to 2026 West 68th Place. At this point, Ross stated that he acted as a lookout while Mosley, Brewer, and Livingston approached Kline as he moved toward his car. Kline managed to get into his car while Mosley attempted to grab him from the passenger side. At the same time, Brewer and Livingston, armed with a shotgun and pistol respectively, were on either side of the car. When Kline started his motor in an attempted escape, Brewer shot Kline in the back. After taking $27 from Kline, all four fled the scene of the crime.

After taking Ross' statement, the police arrested Mosley later the same day. Mosley gave police a statement wherein he admitted participating in the events of the preceding evening. However, Mosley claimed that he rather than Ross acted as lookout during the robbery-murder. In addition, Mosley stated that only Ross, Livingston, and he

were involved; that Ross and Livingston were armed, and that a struggle had ensued between Ross, Livingston, and Kline. In all other respects, Mosley's statement was similar to that given by Ross.

Both defendants were represented at trial by the same privately retained counsel. Defendants' attorney filed no pretrial motions to quash the arrests, to suppress evidence, or to sever defendants' trial. In his opening statement to the jury, defense counsel stated that the defendants' statements were inconsistent with each other, and therefore, if one were true the other could not be true. The State's witnesses at trial included the woman to whom Kline had delivered the pizza, the owner of the restaurant at which Kline had worked, three police officers, and an assistant State's Attorney. The police officers and the assistant State's Attorney had participated in the investigation and pretrial interrogation of both defendants. In cross-examining one of the officers, defense counsel asked if Ross had lied in naming Tyrone Livingston as a participant in the robbery-murder. Livingston's name had not previously been mentioned by either the prosecution or the defense. Defense counsel also asked the assistant State's Attorney if he believed both defendants and whether he had attempted to reconcile their statements. At the close of the State's case in chief, the pretrial statements of both defendants were admitted into evidence.

Mosley testified at trial in his own behalf and denied his participation in the robbery-murder. He stated that on December 8, 1982, he was 17 years old and living with his father, mother, and seven sisters at 2119 West Marquette Road in Chicago. He added on the evening in question he was leaving the gameroom on his way home when he heard a shot which he ascribed at that time to gang activity. Mosley further testified that he was arrested at approximately 6 p.m. on December 9, 1982, at West 69th Street and Damen Avenue, and taken to a nearby police station, that he had made two requests to call his mother after arriving at the police station and that both requests were denied, and that he gave police a false statement at that time. Mosley explained that he gave the statement because he was frightened since he had never been arrested and could not call his mother.

Alphonso T. Smith, Director of the Citizens Council of the Southwest Englewood Community, testified as a character witness on Mosley's behalf. Smith testified that he had known Mosley for three years, and that he was familiar with Mosley's reputation in the community as an upright, honest, and truthful young man. Ross did not take the stand nor did any witnesses appear on his behalf.

The jury retired to deliberate at 2:38 p.m. At 7:09 p.m., the jury

submitted a note to the court, stating that they were indefinitely deadlocked. The court chose to lock the jury up for the evening. The jury resumed deliberations at 9:30 a.m. the next day. At approximately 3 p.m, the jury submitted another note stating that they had reached a verdict on one defendant, but could not reach a verdict on the second defendant. The jury was then brought out and, over defense counsel's objection, given an instruction in accordance with *People v. Prim* (1972), 53 Ill. 2d 62, 289 N.E.2d 601, *cert. denied* (1973), 412 U.S. 918, 37 L. Ed. 2d 144, 93 S. Ct. 2731. At approximately 5 p.m., the jury returned a verdict of guilty as to both defendants.

OPINION

I

On appeal, both defendants contend that their joint representation by the same attorney in a single trial created a conflict of interest denying each of them the right to effective assistance of counsel. Mosley also contends that he was denied his right of confrontation because of his inability to challenge Ross' pretrial confession received in evidence. The State maintains that defendants waived the issues by failing to raise them either at trial or in a post-trial motion.

■ Generally, an issue not raised at trial or in a post-trial motion cannot be raised for the first time on appeal. (*People v. Caballero* (1984), 102 Ill. 2d 23, 31, 464 N.E.2d 223, *cert. denied* (1984), 469 U.S. 963, 83 L. Ed. 2d 298, 105 S. Ct. 362; *People v. Precup* (1978), 73 Ill. 2d 7, 16, 382 N.E.2d 227.) An exception to the general rule of waiver applies where a defendant alleges a conflict of interest resulting in ineffective assistance of counsel, although the right of appeal may be lost if there has been a post-trial review of defendant's case by independent counsel. (*People v. Bainter* (1981), 102 Ill. App. 3d 1029, 1031, 430 N.E.2d 721; *People v. Sally* (1980), 84 Ill. App. 3d 167, 169, 405 N.E.2d 407.) Here there is no indication of any post-trial review by independent counsel for either defendant prior to this appeal to preclude our review. In addition, plain errors or defects affecting substantial rights may be noticed, although not brought to the attention of the trial court. (87 Ill. 2d R. 615(a).) Under the plain error rule, an issue can be raised for the first time on appeal if it involves error so substantial that defendant was denied a fair and impartial trial. (*People v. Beasley* (1982), 109 Ill. App. 3d 446, 440 N.E.2d 961; *People v. Winston* (1982), 106 Ill. App. 3d 673, 435 N.E.2d 1327; *People v. Andino* (1981), 99 Ill. App. 3d 952, 425 N.E.2d 1333; *People v. Carlyle* (1979), 69 Ill. App. 3d 14, 387 N.E.2d 1.) A

conflict of interest affecting legal representation constitutes plain error if the record plainly indicates an actual conflict precluding counsel's undivided loyalty. (*People v. Carlyle* (1979), 69 Ill. App. 3d 14, 18, 387 N.E.2d 1.) Here defendants have raised issues which are basic to a fair and impartial trial. Therefore, we will consider the contentions raised by defendants.

## II

■ We initially address Mosley's contention that he was denied his sixth amendment right of confrontation because he was unable to challenge the pertinent portions of Ross' pretrial confession. Mosley maintains that Ross' confession which was received at trial contained inculpatory evidence regarding Mosley. Since Ross did not testify at trial, Mosley argues that he was denied his right of cross-examination secured by the confrontation clause of the sixth amendment, and that his conviction should be reversed on this basis.

In *Bruton v. United States* (1968), 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620, the Supreme Court reversed the defendant's conviction for armed robbery where a pretrial confession of a codefendant inculpating the defendant was admitted into evidence at a joint trial. The defendant himself made no admission of guilt either before or during the trial and was unable to cross-examine the codefendant regarding the inculpatory portions of his extrajudicial statement. The Supreme Court held that the introduction into evidence of the statement of a nontestifying defendant implicating a codefendant violated that defendant's sixth amendment right to a confrontation, regardless of whether the jury was given appropriate limiting instructions.

The prejudicial effect of a codefendant's extrajudicial statement was again considered in *Parker v. Randolph* (1979), 442 U.S. 62, 60 L. Ed. 2d 713, 99 S. Ct. 2132. In *Parker* the pretrial confessions of all the defendants which were introduced in evidence were interlocking in that they demonstrated the involvement of each defendant concerning such crucial facts as time, locality, felonious activity, and awareness of the overall plan or scheme. Although recognizing the possible devastating consequences of an extrajudicial statement by a nontestifying codefendant to a nonconfessing defendant, the Supreme Court noted that the same devastating effect was not present when the defendant's own confession was properly introduced at trial and that the right of cross-examination had far less practical value to a defendant who had confessed to the crime than to one who had consistently maintained his innocence. The Supreme Court with a four-member plurality held that the introduction of "interlocking confes-

sions" with the proper cautionary instructions that the confession of one defendant cannot be considered as evidence of the guilt of the other does not violate a defendant's rights under the fourteenth or sixth amendments. The Illinois Supreme Court, both before and after *Parker* has invoked the exception as to interlocking statements. See *People v. Davis* (1983), 97 Ill. 2d 1, 21, 452 N.E.2d 525; *People v. Bassett* (1974), 56 Ill. 2d 285, 294-95, 307 N.E.2d 359; *People v. Rosochacki* (1969), 41 Ill. 2d 483, 492-94, 244 N.E.2d 136.

In the instant case, the pretrial statements of both Ross and Mosley were properly before the jury. Furthermore, the defendants' confessions were interlocking in that they demonstrated the same crucial facts with regard to time, locality, felonious activity, and overall plan. They differed only as to who acted as lookout and not as to defendants' participation. In addition, the record below indicates that the trial judge properly instructed the jury concerning the use of one defendant's statement against any other defendant.

Based on the foregoing, we hold that Mosley was not denied his sixth amendment right of confrontation despite his inability to challenge the inculpatory portions of Ross' pretrial confession. We, therefore, conclude that Mosley's contention is without merit and not a basis for reversal of his conviction.

### III

On appeal, defendants Ross and Mosley are each represented by separate new counsel. In separate briefs, each contends that he was denied his sixth amendment right to effective assistance of counsel. Each maintains that their representation by the single attorney in a joint trial resulted in an actual attorney conflict of interest which adversely affected their representation. The State responds that there was no actual conflict of interest at trial.

■ An accused has a sixth amendment right to effective assistance of counsel. (*Cuyler v. Sullivan* (1980), 446 U.S. 335, 64 L. Ed. 2d 333, 100 S. Ct. 1708; *People v. Washington* (1984), 101 Ill. 2d 104, 461 N.E.2d 393, *cert. denied* (1984), 469 U.S. 1022, 83 L. Ed. 2d 367, 105 S. Ct. 941.) "Such representation is lacking, however, if counsel, unknown to the accused and without his knowledgeable assent, is in a duplicitous position where his full talents—as a vigorous advocate having the single aim of acquittal by all means fair and honorable—are hobbled or fettered or restrained by commitments to others." (*People v. Stoval* (1968), 40 Ill. 2d 109, 112, 239 N.E.2d 441, quoting *Porter v. United States* (5th Cir. 1962), 298 F.2d 461, 463.) The assistance of counsel means assistance which entitles an accused to the undivided

loyalty of his counsel and which prohibits the attorney from representing conflicting interest or undertaking the discharge of inconsistent obligations. (*People v. Washington* (1984), 101 Ill. 2d 104, 461 N.E.2d 393; *People v. Nelson* (1980), 82 Ill. 2d 67, 411 N.E.2d 261.) A possible conflict inheres in almost every instance of multiple representation. However, joint representation of codefendants by one attorney does not *per se* violate defendant's right to effective assistance of counsel. (*Cuyler v. Sullivan* (1980), 446 U.S. 335, 64 L. Ed. 2d 333, 100 S. Ct. 1708; *People v. Washington* (1984), 101 Ill. 2d 104, 461 N.E.2d 393; *People v. Vriner* (1978), 74 Ill. 2d 329, 340, 385 N.E.2d 671, *cert. denied* (1979), 442 U.S. 929, 61 L. Ed. 2d 296, 99 S. Ct. 2858; *People v. Wells* (1982), 106 Ill. App. 3d 1077, 436 N.E.2d 688.) Where codefendants are jointly represented by one attorney, a defendant must demonstrate "an actual conflict of interest manifested at trial" in order to claim a denial of effective assistance of counsel. *People v. Cunningham* (1985), 107 Ill. 2d 143, 149, 481 N.E.2d 722; *People v. Washington* (1984), 101 Ill. 2d 104, 461 N.E.2d 393.

While it is not presumed that the interests of criminal defendants are necessarily hostile, joint representation constitutes a denial of effective assistance of counsel and prejudice is presumed where hostility of interests is shown to exist; when the jury hears the codefendant's statements implicating the defendant, the codefendant becomes a "witness" against the defendant, and the defendant is constitutionally entitled to have an opportunity to "confront" such witness. (*People v. Cade* (1981), 97 Ill. App. 3d 354, 357, 422 N.E.2d 1002.) In a joint trial, a defendant whose testimony is antagonistic to the interest of a codefendant has a conflict of interest with that codefendant. (*People v. Martinez* (1982), 104 Ill. App. 3d 990, 433 N.E.2d 981; *People v. Cade* (1981), 97 Ill. App. 3d 354, 422 N.E.2d 1002.) If a conflict of interest in the form of conflicting professional commitments is shown, defendant need not demonstrate any prejudice to justify reversal. (*People v. Lewis* (1981), 88 Ill. 2d 429, 436, 430 N.E.2d 994, *cert. denied* (1983), 460 U.S. 1053, 75 L. Ed. 2d 932, 103 S. Ct. 1501.) In applying the rule governing joint representation of defendants, we must consider whether defendant has demonstrated "an actual conflict of interest manifested at trial" which resulted in a denial of effective assistance of counsel. *People v. Cunningham* (1985), 107 Ill. 2d 143, 481 N.E.2d 722.

An actual conflict of interest exists in a joint trial where the defenses of codefendants are shown to be antagonistic or hostile to each other. (*People v. Echols* (1978), 74 Ill. 2d 319, 327, 385 N.E.2d 644; *People v. Martinez* (1982), 104 Ill. App. 3d 990, 992, 433 N.E.2d

981.) Antagonism creating an actual conflict of interest is demonstrated when, in a joint trial, the out-of-court statement of one defendant is introduced against his codefendant. The prejudice resulting from the extrajudicial statement is not ameliorated even if the declarant repudiates the statement at trial since defense counsel, as attorney for both defendants, cannot adequately impeach the defendant who made the statement. *People v. Martinez* (1982), 104 Ill. App. 3d 990, 992, 433 N.E.2d 982; *People v. Wilder* (1977), 48 Ill. App. 3d 13, 15, 362 N.E.2d 436.

In *People v. Cade* (1981), 97 Ill. App. 3d 354, 422 N.E.2d 1002, following a jury trial, defendants Cade and DeBarry represented by the same counsel were convicted of armed robbery. Each defendant allegedly made a statement to the police which implicated himself and his codefendant. The victim testified that he was robbed by defendants while Cade held a gun. The victim and other witnesses testified that defendants fled and were apprehended jumping from a hotel window. The State agreed to excise that portion of each defendant's statement implicating the other. The excised statements were entered in evidence. DeBarry testified in his own behalf and admitted being on the scene with Cade and making a statement. He denied stating he was at the scene when Cade robbed the victim and denied any participation. The police officer on rebuttal testified that DeBarry told him he was there but that Cade had the gun and took the money. Cade did not testify. The appellate court stated that when the jury heard DeBarry's statement implicating Cade, DeBarry became a witness against Cade and Cade was constitutionally entitled to have an opportunity to confront such witness. (*People v. Cade* (1981), 97 Ill. App. 3d 354, 356-57, 422 N.E.2d 1002, citing *Nelson v. O'Neil* (1971), 402 U.S. 622, 29 L. Ed. 2d 222, 91 S. Ct. 1723.) The court held that because of the joint representation Cade's attorney was not free to subject DeBarry to full and effective cross-examination concerning the alleged out-of-court statement and that Cade was thereby denied his constitutionally protected right to confront witnesses against him. Cade was therefore granted a new trial.

■ In the instant case, similar to *Cade*, Mosley testified and repudiated his pretrial statement. However, his statement implicating Ross was in evidence before the jury in its entirety. Ross did not testify. The State's proof of guilt was based almost wholly on the defendants' statements. Although Mosley repudiated his statement, the jury may still have believed that the statement was made and that Mosley was telling the truth at the time he made the statement implicating Ross. (See *People v. Cade* (1981), 97 Ill. App. 3d 354, 357, 422 N.E.2d

1002.) When the jury heard Mosley's statement implicating Ross, Mosley became a material "witness" against Ross before the jury and Ross was constitutionally entitled to have effective assistance of counsel with undivided loyalty and without inconsistent commitments to the witness against him. Here, as in *Cade*, because of joint representation, counsel for Ross was not free to cross-examine Mosley due to his divided loyalties and commitments. Likewise, defense counsel would necessarily have had to impeach his other client Mosley in order to aggressively and vigorously exercise Ross' right to confront a witness against him. Counsel of necessity had to assume a position of ambivalence and yet a concurring obligation to professionally assist Mosley. (See *People v. Ware* (1968), 39 Ill. 2d 66, 233 N.E.2d 421.) Thus, Ross was not provided with effective assistance of counsel because his counsel was in a duplicitous position where his full talents were hobbled, fettered and restrained by commitments to Mosley. Under the circumstances, Ross did not receive the proper assistance of counsel to which he had a right, and, therefore, he is entitled to a new trial.

We reach the same conclusion as to Mosley. Ross was a witness against Mosley because of Ross' pretrial statement implicating Mosley in the offense. Mosley testified and repudiated his statement and asserted an alibi defense. Ross exercised his right as a criminal defendant not to testify and offered no defense at trial. His statement was in evidence before the jury in its entirety, neither challenged nor repudiated. The prejudice to Mosley could not be dispelled by cross-examination nor be erased by limiting instructions. (See *Bruton v. United States* (1968), 391 U.S. 123, 132, 20 L. Ed. 2d 476, 483, 88 S. Ct. 1620, 1626.) When codefendants have each made statements implicating the other but professing their own innocence, it is almost inevitable that the defense at trial becomes inconsistent and antagonistic. (*People v. Daugherty* (1984), 102 Ill. 2d 533, 544, 468 N.E.2d 969.) In the instant case, the interests of defendants diverged and were hostile. Again, the single attorney of necessity had to assume a position of ambivalence and yet a concurring obligation to assist Ross who had not testified. (*People v. Ware* (1968), 39 Ill. 2d 66, 233 N.E.2d 421.) The material hostility developed between defendants and joint counsel's commitment to Ross prevented counsel from representing Mosley with undivided loyalty. Under the circumstances, Mosley was not accorded effective assistance of counsel and is entitled to a new trial.

The State's reliance on *People v. Berland* (1978), 74 Ill. 2d 286, 385 N.E.2d 649, *cert. denied* (1979), 444 U.S. 833, 62 L. Ed. 2d 42,

100 S. Ct. 63, for a contrary conclusion is misplaced. *Berland* reinstated a conviction after failing to find any actual conflict of interest arising from the defendants' representation by a single attorney in a joint trial. *Berland* is distinguishable in several respects. Initially, the record was devoid of any evidence of actual conflict between defendants. Although the pretrial statements of both defendants were introduced at trial, the statement of each defendant did not inculpate his codefendant. Thus, defendants' contentions concerning actual conflict were found to be merely speculative. (*People v. Berland* (1978), 74 Ill. 2d 286, 300-01, 385 N.E.2d 649.) Furthermore, the prosecution there introduced inculpatory evidence in addition to the evidence derived from defendants' pretrial statements. (74 Ill. 2d 286, 296, 385 N.E.2d 649.) Finally, an additional co-counsel was present for one defendant throughout the trial, and separate counsel was provided for both defendants during post-trial motions. 74 Ill. 2d 286, 301, 385 N.E.2d 649.

In the instant case, defendants have demonstrated an actual conflict arising from defense counsel's inability to challenge the inculpatory portions of their codefendants' extrajudicial statements. Furthermore, the State did not introduce any additional evidence to inculpate defendants, but relied almost completely on information drawn from defendants' pretrial statements. Finally, neither Ross nor Mosley had individual representation at any time prior to this appeal.

In sum, we reverse both convictions and remand for new trial with separate counsel for each defendant upon a joint trial or, in the alternative, separate trials to avoid the conflict of interest and resulting prejudice discussed herein. See generally *People v. Daugherty* (1984), 102 Ill. 2d 533, 468 N.E.2d 969 (severance required where codefendants' defenses are antagonistic); *People v. Wilder* (1977), 48 Ill. App. 3d 13, 362 N.E.2d 436 (no conflict of interest when defendants charged with same crime are represented by same attorney in different trials).

For all of the foregoing reasons, we reverse the judgments of conviction and remand for new trial with directions.

Reversed and remanded with directions.

LORENZ and SULLIVAN, JJ., concur.