THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LESLIE BENNETT *et al.*, Defendants-Appellants.

First District (5th Division)   No. 85—3273

Opinion filed September 30, 1987.—Rehearing denied November 4, 1987.

James J. Doherty, Public Defender, of Chicago (Richard E. Gade, Assistant Public Defender, of counsel), for appellants.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., James E. Fitzgerald, and Carl L. Gaines, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

Following a joint bench trial, defendants, Leslie and Wilbur Bennett, were convicted of residential burglary and each was sentenced to a term of four years. On appeal, both defendants contend that due to a conflict in their interests their joint representation by a single attorney resulted in the denial of their sixth amendment right to effective assistance of counsel. Leslie correlatively contends that by reason of the joint representation he was also deprived of his constitutional right to cross-examine Wilbur regarding his post-ar-

rest statement implicating them in the crime.

At trial, Reuben Chisholm testified that he was home alone in his first-floor bedroom on the morning of June 8, 1984, when, at approximately 10:45, the front doorbell rang. He looked out the dining room window next to the front door and saw Leslie standing at the door and Wilbur standing across the street. He did not open the door but, instead, returned to his room. A short while later, he heard the rear doorbell ring and after a few more seconds, the front bell rang again. A short while later, he heard someone kicking in the basement door, but he was unable to see anything from the top of the basement stairs. He immediately returned to his room and, as he was dressing, he heard the basement door break open. Armed with a bat, he descended the basement stairs and, as he reached the bottom, he saw Leslie running out of the back door. He ran out the basement door into the yard and began chasing Leslie, who was running across the street; but, on the suggestion of a neighbor, he finally stopped and called the police. When he returned home and examined the door, he saw that "the lock was busted off and a safety chain was broken." He had known defendants for about eight years, because they had all attended the same school. On cross-examination, Chisholm at first did not recall having testified at the preliminary hearing that he did not see anyone leave the house through the basement door; but on redirect examination, he explained that the point in time to which the question and his answer referred was when he was at the top of the basement stairs after first hearing the door being kicked in and that it was later, when he descended the stairs after putting his pants on, that he saw Leslie.

Chisholm's mother, Beatrice Chisholm, testified that when she and her daughter left the house through the rear door earlier that morning, it was locked and undamaged.

Chicago police detective Walter McWilliams testified that he and two other detectives arrested Wilbur at his home at 2:45 that afternoon, advised him of his rights, informed him that he had been seen running from the scene of a burglary and asked if he wished to speak to them. Wilbur then told them that Leslie had come to him and said he wanted them to break into the Chisholm house because no one was at home and there was a substantial amount of stereo equipment inside. They agreed that he would act as the lookout while Leslie went inside to remove the stereo equipment and that they would share equally in the proceeds of the burglary. Wilbur further stated that when they arrived at the house, Leslie first rang the front doorbell and then went around to the rear of the house. A

few minutes later, Leslie came running from the rear and they both ran eastbound from the house.

Following the denial of defense counsel's motion for a finding that the State had failed to prove all material elements of the offense charged, Wilbur took the stand in his own behalf. He testified that on the date in question he was awakened by his mother at about 10 a.m. and left the house shortly thereafter to do some errands for her. He returned at about 10:30 a.m. and then immediately left again to visit a friend, at whose house he remained until noon, at which time he returned home after learning from another friend that Leslie had been arrested. In response to inquiries from defense counsel, he at first testified that he did not go to the Chisholm home on June 8; he then stated that he had been there with a girlfriend at about 11:30 a.m. to pick up her younger sister from school; but, upon further examination, he reiterated that he had not gone to the Chisholm home at any time on June 8. On cross-examination, Wilbur denied knowing or ever having seen Reuben Chisholm before, but acknowledged that Chisholm had attended the same school from which he had graduated. He also stated that McWilliams was not one of the two detectives who came to his house to arrest him or the detective who later questioned him. He denied making any statement while in custody, asserting that the alleged statement was fabricated by the officer who questioned him at the police station. According to Wilbur, Leslie was at home in bed when he left the house on the morning in question.

Leslie also testified that he was in bed when, at about 10:45 a.m., his mother hollered up toward his bedroom that someone was at the door to see him. When he came down the stairs, two police officers and Reuben Chisholm were already in the house. One officer asked him his name and then told him that he was under arrest for residential burglary. The other then ordered him to get dressed quickly, threatening to take him into custody in his pajamas. After the police handcuffed him, they asked Reuben Chisholm, "[Are] you sure this is the guy?" and then transported him to the police station. He testified that he had not gone to the Chisholm home at any time on the day of the burglary. On cross-examination, Leslie stated that he had attended school with Chisholm and knew where he lived and that although Wilbur also attended that school, he was in a different class and never knew Chisholm.

Following argument by counsel, the trial court found defendants guilty and, after a subsequent hearing, denied defense counsel's post-trial motion to vacate the judgment and/or grant a new trial

and sentenced each of them to the statutorily prescribed minimum term of four years' imprisonment. This appeal followed.

OPINION

■ It is the State's position that defendants have waived the issues presented in this appeal by failing to raise them at trial or in a post-trial motion. It is true that as a general rule, errors not brought to the attention of the trial court are deemed waived for purposes of review (*People v. Caballero* (1984), 102 Ill. 2d 23, 464 N.E.2d 223); however, because strict adherence thereto would frequently result in defendants being precluded from raising claims of ineffective assistance of counsel by reason of the inaction of the very attorney whose performance is the basis thereof (see *People v. Martinez* (1982), 104 Ill. App. 3d 990, 433 N.E.2d 981), courts have recognized an exception to the general rule where a defendant alleges that a conflict of interest has resulted in a deprivation of effective representation and there has been no post-trial review of the case by independent counsel (*People v. Ross* (1985), 138 Ill. App. 3d 1089, 487 N.E.2d 68; *People v. Bainter* (1981), 102 Ill. App. 3d 1029, 430 N.E.2d 721). This exception comports with the plain-error doctrine embodied in Supreme Court Rule 615(a) (87 Ill. 2d R. 615(a)), which permits a reviewing court to consider allegations of errors raised for the first time on appeal if they involve rights so substantial that defendant may have been prevented from receiving a fair trial. Since the record discloses that defendants' post-trial motion was prepared and argued by the same attorney who represented them at trial, and because defendants' contentions concern rights guaranteed by the sixth amendment, we decline to apply the general waiver rule in this case. See *People v. Hoskins* (1984), 101 Ill. 2d 209, 461 N.E.2d 941.

The issues in this case are closely related since both center on the testimony of Officer McWilliams that Wilbur made a post-arrest statement directly implicating himself and Leslie in the burglary. Leslie contends that by reason of this testimony Wilbur became, in substance, a witness against him but that because of the joint representation, defense counsel "was not free to exercise [his] right of confrontation without, of necessity, impeaching [Wilbur], his other client." Both defendants also assert that the statement created an "actual conflict" in their interests resulting in a *per se* violation of their right to "untrammeled and effective assistance of counsel."

■ It is axiomatic that the admission at trial of a statement by a nontestifying codefendant which implicates the defendant consti-

tutes a denial of a defendant's sixth amendment right to confront witnesses against him (*Bruton v. United States* (1968), 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620), essential to which is the right of cross-examination (*Pointer v. Texas* (1965), 380 U.S. 400, 13 L. Ed. 2d 923, 85 S. Ct. 1065). Conversely, the confrontation clause is not violated by the admission of such a statement where the declarant testifies at trial and is subject to full and effective cross-examination (*Nelson v. O'Neil* (1971), 402 U.S. 622, 29 L. Ed. 2d 222, 91 S. Ct. 1723).

In *Nelson*, the United States Supreme Court considered the issue of " 'full and effective' cross-examination" in a factual context similar to the one before us. (402 U.S. 622, 627, 29 L. Ed. 2d 222, 227, 91 S. Ct. 1723, 1726.) In that case, defendant, O'Neil, and his codefendant, Runnels, were charged with kidnapping, robbery and vehicle theft. They had been arrested shortly after the proprietor of a liquor store made a midnight call to the police reporting that he had seen two men suspiciously cruising about the neighborhood in a white Cadillac. The police spotted the Cadillac and followed it into an alley, where a gun was thrown from one of its windows. Further investigation disclosed that the car had been stolen at approximately 10:30 p.m. by two men who had forced its owner at gunpoint to drive them a distance of a few blocks, whereupon they robbed him and then drove off. O'Neil and Runnels were subsequently identified by the victim. At their joint trial, a police officer testified that following his arrest Runnels made an oral statement implicating both himself and O'Neil in the crimes with which they were charged. The trial court instructed the jury that although the statement was admissible against Runnels, it could not be considered as evidence against O'Neil. Following presentation of the State's (California's) case, O'Neil and Runnels both offered the same alibi defense, testifying that they left O'Neil's house, where they had spent the entire evening together, at about 11 p.m. and while waiting for a bus, were picked up by a friend in a white Cadillac who offered them the use of the car while he went to a nightclub. On their way, they discovered a gun in the glove compartment and, fearing that it might be found if they were stopped, they drove into an alley and threw it away. Runnels further testified on direct examination that he had not made the statement attributed to him and that its substance was false. Although the prosecutor cross-examined Runnels, counsel for O'Neil did not. O'Neil and Runnels were both found guilty, but O'Neil's conviction was subsequently overturned on the basis of the holding in *Bruton*, which had been decided during the pendency of

his appeal. In reversing the Court of Appeals for the Ninth Circuit (*O'Neil v. Nelson* (9th Cir. 1970), 422 F.2d 319), the Supreme Court ruled that a constitutional violation under *Bruton* occurs only where the out-of-court statement is made by a declarant who is unavailable at the trial for " 'full and effective' cross-examination" (*Nelson v. O'Neil* (1971), 402 U.S. 622, 627, 29 L. Ed. 2d 222, 227, 91 S. Ct. 1723, 1726), and then proceeded to consider the issue "whether cross-examination can be full and effective where the declarant is present at the trial, takes the witness stand, testifies fully as to his activities during the period described in his alleged out-of-court statement, but denies that he made the statement and claims that its substance is false." 402 U.S. 622, 627, 29 L. Ed. 2d 222, 227, 91 S. Ct. 1723, 1726.

Noting that in the case before it, Runnels not only denied making the statement attributed to him but in fact testified favorably to O'Neil, the court reasoned:

"Had Runnels *** 'affirmed the statement as his,' [O'Neil] would certainly have been in far worse straits than those in which he found himself when Runnels testified as he did. For then counsel for [O'Neil] could only have attempted to show through cross-examination that Runnels had confessed to a crime he had not committed, or, slightly more plausibly, that those parts of the confession implicating [O'Neil] were fabricated. This would, moreover, have required an abandonment of the joint alibi defense, and the production of a new explanation for [O'Neil's] presence with Runnels in the white Cadillac at the time of their arrest. To be sure, Runnels might have 'affirmed the statement' but denied its truthfulness, claiming, for example, that it had been coerced, or made as part of a plea bargain. But cross-examination by [O'Neil's] counsel would have been futile in that event as well. For once Runnels had testified that the statement was false, it could hardly have profited [O'Neil] for his counsel through cross-examination to try to shake that testimony. If the jury were to believe that the statement was false as to Runnels, it could hardly conclude that it was not false as to [O'Neil] as well.

The short of the matter is that, given a joint trial and a common defense, Runnels' testimony respecting his alleged out-of-court statement was more favorable to [O'Neil] than any that cross-examination by counsel could possibly have produced, had Runnels 'affirmed the statement as his.' It would be unrealistic in the extreme in the circumstances here pre-

sented to hold that [O'Neil] was denied either the opportunity or benefit of full and effective cross-examination of Runnels.

We conclude that where a codefendant takes the stand in his own defense, denies making an alleged out-of-court statement implicating the defendant, and proceeds to testify favorably to the defendant concerning the underlying facts, the defendant has been denied no rights protected by the Sixth and Fourteenth Amendments." 402 U.S. 622, 628-30, 29 L. Ed. 2d 222, 228, 91 S. Ct. 1723, 1727.

Similarly, in the case before us, Wilbur took the witness stand, denied making the statement attributed to him, claimed that its substance was entirely false and that he never even spoke to the officer through whose direct examination it was introduced and not only testified as to his own alibi for the time of the offense but also gave testimony corroborating Leslie's assertion that he (Leslie) was at home in bed at the time it occurred.

■ Leslie asserts that *Nelson* is distinguishable because in that case O'Neil's attorney was free to cross-examine Runnels, whereas defense counsel here was unable to cross-examine Wilbur because Wilbur was also his client. In our view, however, that is a distinction without a difference. Like the court in *Nelson*, we cannot conceive—nor was appellate counsel able to posit—what defense counsel could have accomplished by an "aggressive cross-examination" of Wilbur. It could hardly have profited Leslie, and certainly not Wilbur, for counsel to have cross-examined Wilbur in such a way as to impeach his testimony that he did not make the statement and that it was false. Clearly, Wilbur's testimony repudiating that statement was more favorable to the interests of both defendants than anything that might have been elicited on cross-examination of him. Thus, whether or not, from a theoretical standpoint, defense counsel was "free" to cross-examine Wilbur, it cannot be realistically said in the light of the facts presented here that but for his joint representation of defendants he would have done so. Indeed, the inescapable reality of the situation before us is that cross-examination of Wilbur would have been detrimental to the interests of both defendants, no matter *who* the cross-examining attorney might have been representing, whether Wilbur, Leslie, both—or even the State. We therefore reject defendants' contentions that their joint representation deprived either of his right to effective assistance of counsel or denied Leslie the benefit of "full and effective cross-examination."

■ Notwithstanding our finding that Leslie was not denied his right to cross-examine Wilbur as to his pretrial statement, we are

constrained to agree that the introduction and use of that statement as substantive evidence against him requires reversal of his conviction.

Although the State acknowledges that it is a fundamental rule of evidence that an out-of-court statement of a codefendant implicating a defendant is hearsay which is inadmissible as substantive evidence against the defendant (*Lee v. Illinois* (1986), 476 U.S. 530, 90 L. Ed. 2d 514, 106 S. Ct. 2056), whether or not it is subject to cross-examination (*Nelson v. O'Neil* (1971), 402 U.S. 622, 627, 29 L. Ed. 2d 222, 226, 91 S. Ct. 1723, 1725-26), it maintained in its argument before us that in view of the other evidence against Leslie, it is not "crystal clear" from the record that the trial judge considered Wilbur's statement against Leslie, and urged that we therefore adhere to the general principle that in a bench trial it is presumed that the trial judge knew the law and considered only competent evidence in assessing the defendant's guilt (*People v. McNeal* (1977), 56 Ill. App. 3d 132, 371 N.E.2d 926).

In contrast to the State's viewpoint, however, it is clear to us that Wilbur's statement was both introduced and considered as substantive evidence against Leslie. In response to defense counsel's motion for a directed finding at the close of the State's case, the prosecutor argued that Officer McWilliams' testimony regarding the statement "corroborated the direct testimony of Reuben [Chisholm] that he saw the defendant [Leslie] in the basement"; and in denying the motion, the trial court adopted that argument, remarking that Wilbur's statement was corroborative of Chisholm's testimony that he saw Leslie run out of the house. In closing argument, the prosecutor twice repeated that Wilbur's statement corroborated Chisholm's testimony and, in requesting a finding of guilt, stated,

> "You heard the statement, the admission of Mr. Wilbur Bennett, that he and his brother had planned to commit the burglary. They had gone over and Wilbur, acting as a lookout, Leslie went to the front and back and came running out the back door. They would split the proceeds."

In rendering its verdict, the trial court again noted McWilliams' testimony "as to what Wilbur said they were up to when all this door kicking and watching was going on." Finally, in the event any doubt remains as to whether the court considered Wilbur's statement against Leslie, we note that following a statement made by Leslie at the sentencing hearing in which he maintained his innocence, the court inquired as follows:

> "Well, do you know what Wilbur said about you? Wilbur

says he acted as a lookout while his brother broke into the victim's house. His brother was looking for stereo equipment and had promised to pay Wilbur after he paid [*sic*] the proceeds. You and Wilbur talk to one another?"

Although we agree with Leslie that because Wilbur's statement was improperly introduced and used as substantive evidence against him, his conviction should be reversed, we disagree with his assertion that without Wilbur's statement the evidence, consisting primarily of Chisholm's testimony, was otherwise insufficient to prove the "entry" and "intent" elements of the offense beyond a reasonable doubt and that an outright reversal of his conviction, as opposed to reversal and remandment for a new trial, is warranted. It is well settled that the positive identification of a single, credible witness is sufficient to convict, provided that the witness viewed the accused under such circumstances as would permit a positive identification to be made (*People v. Thomas* (1984), 121 Ill. App. 3d 883, 460 N.E.2d 402); that a conviction may be based on circumstantial evidence, which is defined as proof of facts from which the guilt of the accused can reasonably be inferred (*People v. Morris* (1986), 148 Ill. App. 3d 471, 499 N.E.2d 495); and that the credibility of the witnesses is a matter for determination by the trier of fact (*People v. Pinkham* (1985), 139 Ill. App. 3d 554, 487 N.E.2d 707). The basis of our reversal is not that there was insufficient admissible evidence to support Leslie's conviction but that in finding defendant guilty, the trial court improperly considered and relied on inadmissible hearsay evidence as well.

For the reasons stated, Wilbur's conviction and sentence are affirmed; Leslie's conviction is reversed and his case is remanded for a new trial.

Affirmed in part; reversed and remanded in part.

LORENZ and MURRAY, JJ., concur.