THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DON HOWARD, Defendant-Appellant.

First District (2nd Division)   No. 86—470

Opinion filed February 2, 1988.

Steven Clark and Deborah Liebow, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., and Anthony J. Carballo, Assistant State's Attorneys, of counsel), for the People.

JUSTICE SCARIANO delivered the opinion of the court:

Following a bench trial, defendants Darren Mace and Don Howard were convicted of burglary and sentenced to a term of years in the Illinois Department of Corrections. Defendant Howard appeals from his conviction and sentencing, raising the following issues: (1) whether the joint representation of codefendants Don Howard and Darren Mace violated Howard's right to effective assistance of counsel; (2) whether the trial court erred in sentencing him to the Illinois Department of Corrections rather than placing him in the TASC program; (3) whether the trial court relied upon inaccurate information in sentencing him to seven years' imprisonment.

Howard was charged by information with the burglary of Daurham's Hair Clinic on October 15, 1984. Almost a year prior to trial he was interviewed by TASC for evaluation of his addiction. TASC did not recommend Howard for treatment, finding that al-

though he "is an addict, [he] does not reflect a likelihood of rehabilitation, and *** is unacceptable for TASC services, [as] he does not exhibit a readiness for treatment."

Howard waived a jury and was tried along with his codefendant Mace in September 1986. The two defendants were jointly represented at trial by one public defender. No objection was made to their joint representation, nor did either defendant seek separate counsel.

At trial the People presented two witnesses: Chicago police officer James Simmons and William Daurham, the owner of Daurham's Hair Clinic. Officer Simmons testified that during the early morning hours of October 15, 1984, he went to Daurham's Hair Clinic in response to a "burglary in progress" call. Upon arrival Simmons saw Darren Mace running on the roof of the hair clinic, toward the back of the store. The officer testified that he chased Mace, stopped him and asked him to come down from the roof. After Mace came down and was handcuffed, Simmons went up to the roof, where he saw defendant Howard lying down next to a hole which led into the store. The officer arrested Howard, handcuffed him and helped him off the roof. Simmons testified that although Howard's speech was slurred and difficult to understand, he did not believe that Howard was intoxicated at the time of his arrest. He searched both Howard and Mace and recovered merchandise which had been taken from the store. Simmons testified that when he asked Mace what had happened, Mace told him he "went into the shop and handed the stuff back out to Mr. Howard." Only Simmons, Howard and Mace were present for this conversation.

In response, the defense presented evidence that much of Officer Simmons' testimony was incorrect. George Stewart, Mace's brother, testified that he and Mace had been drinking throughout the day of October 14, 1984, and into the morning of the next day. In the early morning hours of October 15, 1984, Stewart and Mace were standing outside a friend's house drinking alcohol. When Mace went across the street to an alley (two or three buildings from Daurham's Hair Clinic) to relieve himself, the police arrived and arrested Mace in the alley. Stewart denied that Mace was ever on the roof of the hair clinic. He further testified that he went across the street to help his brother and the officers ordered him to leave or he too would be arrested. Defense counsel did not examine this witness with regard to Howard's involvement in the incident.

Darren Mace testified that he was drinking with his brother when he went into the alley to urinate. He further stated that he

was arrested and did not inquire into the charge because he was intoxicated. Mace denied knowing Howard, and he also denied making a statement to Officer Simmons inculpating both himself and Howard in the offense. After Mace's testimony the defense rested. Defense counsel's closing argument focused entirely on Mace.

The trial court found both Mace and Howard guilty of burglary. Howard failed to appear at his sentencing hearing on November 14, 1985. At that hearing, the State presented his criminal history, stating that Howard had a conviction for robbery and possession of narcotics in 1970; a conviction for burglary in 1975; a conviction for theft of lost property in 1976; a plea of guilty to burglary in 1977; a conviction for possession of a controlled substance in 1981; and convictions for possession of a hypodermic needle in April and June of 1984. In mitigation, the defense informed the court that Howard had been accepted by the Gateway Foundation in January 1985 for long-term residential treatment. (Gateway is not identified in the record and it is unclear whether it is a private foundation or is in some way connected to the State.) Defense counsel conceded that it was difficult to make a recitation of mitigating factors without Howard's being present. The trial judge responded:

> "Well, even if he were here, his long history of convictions would not permit me to put him in a residential treatment with Gateway. He can get—He'll have a [sic] residential treatment but it will be in-house treatment under the Illinois Department of Corrections."

He thereupon sentenced Howard to 10 years in the Illinois Department of Corrections.

On November 22, 1985, Howard appeared before the trial judge and stated that he was in custody at the time of his sentencing hearing. The court accordingly vacated his sentence and held a new hearing. At this second hearing, the State supplemented its presentation of Howard's criminal history given at the previous hearing by informing the court that Howard was convicted of theft in 1964, 1965 and 1968; criminal trespass in 1968; theft, 1976; theft, possession of cannabis and violation of bail bond, 1979; theft on two separate cases, 1979; theft, 1980; and possession of a hypodermic needle in February 1984. Howard disputed the accuracy of the prosecutor's information. After the prosecutor's recitation, defense counsel reminded the court that defendant was questioning the accuracy of the record; consequently, the trial judge had the following exchange with Howard:

> "MR. HOWARD: A couple of those convictions were wrong.

THE COURT: The three Class IIs were not wrong: two burglaries and a robbery.

MR. HOWARD: I never had no robbery. Went to the penitentiary once for armed robbery in 1970—was not in '75—got one and a day; went in '77 for one to five; and I went for possession of narcotics in '81; that is it. I ain't never did no more time than that.

You know I had a parole violation but I was found innocent. I was charged with a robbery—

THE COURT: You never had the burglaries attributed to you? They had two burglaries that I can recall.

MR. HOWARD: One and a day, one to five, a year and a day and one to five.

THE PEOPLE: That is correct.

THE COURT: Both burglaries Class II felonies?

MR. HOWARD: I was found with the merchandise, sir.

THE COURT: Apparently you have got a drug problem, and I will take that into consideration, but I don't see reducing the sentence to anything less than the maximum. I will sentence you to seven years in the Illinois Department of Corrections."

OPINION

I

■■ Because he and Mace were represented by the same public defender, Howard argues that he was denied his right to the effective assistance of counsel and that defense counsel was prevented from presenting the best defense for him because of counsel's obligation to Mace.

Howard urges that his best defense was the affirmative one of voluntary intoxication, the use of which would negate the specific intent necessary to sustain a conviction for burglary. (*People v. Walcher* (1969), 42 Ill. 2d 159, 246 N.E.2d 256.) Howard further argues that defense counsel could not present this affirmative defense, because to do so would require admitting the burglary occurred and that would be detrimental to Mace. Defense counsel, he asserts, could not contend as to one defendant that the burglary occurred but that the necessary mental state was not present, while as to the other defendant maintain that he was not a participant.

Joint representation of criminal codefendants is not a *per se* violation of the right to the effective assistance of counsel. Because

there is always the possibility that the interests of the defendants may diverge, a defendant must show an actual conflict of interests manifested at trial in order to prevail on a claim of ineffective assistance of counsel which is due to representation of criminal codefendants by a single attorney. (*People v. Vriner* (1978), 74 Ill. 2d 329, 385 N.E.2d 671, *cert. denied* (1979), 442 U.S. 929, 61 L. Ed. 2d 296, 99 S. Ct. 2858.) This may be proved by showing that the defendants' interests were hostile to one another. (*People v. Washington* (1984), 101 Ill. 2d 104, 461 N.E.2d 393, *cert. denied* (1984), 469 U.S. 1022, 83 L. Ed. 2d 367, 105 S. Ct. 442.) It is not necessary to establish actual prejudice to the defendant once the court finds a conflict of interests, as prejudice is presumed. *People v. Echols* (1978), 74 Ill. 2d 319, 385 N.E.2d 644.

The State argues that Howard has not shown an actual conflict of interests. It contends that defense counsel did not present a voluntary intoxication defense for Howard because his attorney decided that a stronger defense could be made by impeaching Officer Simmons.

Howard attempts to demonstrate that a conflict of interests existed by pleading that defense counsel was prevented from presenting a plausible defense. However, the Illinois Supreme Court has said that merely showing that a strategy which was available to the defense was not used does not establish a conflict of interests.

"In most criminal cases, strategy of counsel in presenting the defense must await the actual and perceived results of the prosecution's case. The final outcome invariably will disclose something that counsel could have done during the case that he did not do. Consequently, defense strategy in multiple representation situations often will invite, through hindsight, conceived notions that the representation adversely affected the interests of at least one defendant at some point in the trial process. *** Before we arrive at the point of reversing a conviction without requiring a showing of prejudice to the defendant, a positive basis must be found for concluding that an actual conflict of interests existed." *People v. Vriner* (1978), 74 Ill. 2d 329, 341-42.

Our supreme court has also addressed the contention that an independent attorney would have adopted a strategy different than that of an attorney hampered by a conflict of interests:

"In short, we do not know what strategy independent counsel would have pursued, and this court has in the past refused to find hostility between the interests of criminal co-defendants

based on the mere possibility that one strategy available to defense counsel would have helped one defendant at the expense of another." *People v. Echols* (1978), 74 Ill. 2d 319, 327-28.

Accordingly, although it is possible that an independent attorney would have presented the affirmative defense of voluntary intoxication on behalf of Howard, the mere existence of that possibility does not establish the presence of a conflict of interests.

■ Howard also points out that defense counsel had to contend with Officer Simmons' testimony that Mace told him "he [Mace] went into the shop and handed the stuff back out to Mr. Howard." Defense counsel could not cross-examine Mace on this statement, because Mace was also his client. Howard relies on *People v. Ross* (1985), 138 Ill. App. 3d 1089, 487 N.E.2d 68, in which the court held:

"Antagonism creating an actual conflict of interest is demonstrated when, in a joint trial, the out-of-court statement of one defendant is introduced against his co-defendant. The prejudice resulting from the extrajudicial statement is not ameliorated even if the declarant repudiates the statement at trial since defense counsel, as attorney for both defendants, cannot adequately impeach the defendant who made the statement." 138 Ill. App. 3d at 1097.

In *Ross*, both Ross and Mosley gave statements to the police shortly after they were arrested for murder and armed robbery. In his statement, Ross claimed that he participated in the robbery-murder only as a lookout, while Mosley and others performed the actual crime. In his statement, Mosley admitted that he participated in the incident but claimed that he rather than Ross acted as lookout. Mosley also said that Ross was armed during the incident. At trial, both defendants were represented by the same attorney. Both statements were admitted into evidence. Mosley testified at trial and denied any involvement in the crime. He testified that he gave a false statement to the police because he was scared. Ross did not take the stand. The jury convicted both defendants.

On appeal the court reversed both convictions and remanded the case for a new trial. The court held that when the jury heard the statements of each defendant implicating his codefendant, the defendant became a "witness" against his codefendant. Each defendant was constitutionally entitled to confront such a witness and was constitutionally entitled "to have effective assistance of counsel with undivided loyalty and without inconsistent commitments to the witness against him." 138 Ill. App. 3d at 1098.

The State here responds that it was not in Howard's best inter-

est to impeach Mace, because defendants' trial strategy was to discredit Officer Simmons' testimony through Mace and Stewart. It further contends that, because defense counsel did not want to impeach Mace, his inability to do so cannot be considered a conflict of interest. This argument is incorrect, as it addresses whether Howard was prejudiced by Mace's statement; and as discussed above, Howard need not prove he was prejudiced, for once a conflict of interest is shown prejudice will be presumed.

However, Howard has failed to show the requisite conflict of interests, *i.e.,* he has not shown that his interests were hostile to those of Mace. (*People v. Conley* (1983), 118 Ill. App. 3d 122, 454 N.E.2d 1107.) This is clearly not a case where one defendant inculpates a codefendant in an attempt to exculpate himself. (See *People v. Ross* (1985), 139 Ill. App. 3d 674, 487 N.E.2d 68.) Mace denied any involvement in the burglary, he denied knowing Howard, and he denied making an incriminating statement. Given this testimony, we cannot assume that independent counsel would have elicited testimony favorable to Howard had Mace been cross-examined. As we have noted above, there are cases in which the admission of an out-of-court statement by one defendant creates a conflict of interest with a codefendant, but this is decidedly not such a case.

## II

Howard next argues that the trial court erred in failing to order a second TASC evaluation for him. He was evaluated by TASC shortly after his arrest in October 1984 and approximately one year before trial. This evaluation was done pursuant to section 22 of the Alcoholism and Substance Abuse Act (Ill. Rev. Stat., 1984 Supp., ch. 111½, par. 6322), which provides:

> "If a court has reason to believe that an individual charged with a crime is an addict or the individual states that he is an addict and the court finds that he is eligible *** the court shall advise him that *** the prosecution of the charge may be continued or that the entry of any judgment of conviction upon a plea or finding of guilty by the court shall be deferred if he elects to submit to treatment and is accepted for treatment."

Howard was not accepted for treatment by TASC because he did not demonstrate a likelihood for rehabilitation through drug treatment, he lacked recognition of a need, and he did not exhibit a readiness for treatment.

In January 1985, approximately three months after his arrest

and some nine months prior to trial, Howard was accepted by the Gateway Foundation for long-term residential treatment. The trial judge was informed of this during the first sentencing hearing, at which Howard failed to appear. Also at that hearing defense counsel suggested that he thought "had he [Howard] been here and was able to testify and be interviewed by the TASC people again, even at this point he would be found to be an addict." The judge responded that because of Howard's long history of convictions he could not be placed in residential treatment with Gateway and that Howard would receive treatment from the Illinois Department of Corrections. At Howard's second sentencing hearing the trial judge relied on the TASC report finding Howard ineligible for treatment and sentenced him to seven years in the Illinois Department of Corrections.

Howard now argues that he should have been given a second TASC evaluation and that the trial court should have advised him of his eligibility for TASC pursuant to section 23 (Ill. Rev. Stat., 1984 Supp., ch. 111½, par. 6323), which provides:

"If a court has reason to believe that an individual convicted of a crime is an addict *** and the court finds that he is eligible to make the election *** the court shall advise him that he may be placed on probation if he elects to submit to treatment and is accepted for treatment ***. ***

If the individual elects to undergo treatment or is certified for treatment, the court shall order an examination *** to determine whether he is an addict and is likely to be rehabilitated through treatment ***. *** If the court, acting on the report and other information coming to its attention, determines that such an individual is an addict and is likely to be rehabilitated through treatment, the individual shall be placed on probation ***."

In response, the State relies on the fact that although Howard asked for help with his addiction, he did not request a second TASC evaluation and the fact that the Alcoholism and Substance Abuse Act does not mandate a reevaluation. The State also argues that at the time of Howard's second sentencing hearing another burglary charge was pending against him. However, although the record indicates Howard was arrested for burglary on August 3, 1985, there is no indication that this charge was pending on November 22, 1985, the date of the second sentencing hearing.

Initially, we note that Howard did not raise this issue before the trial court. However, we will address his argument on the merits because the State has not argued that it is waived. Article III of the

Alcoholism and Substance Abuse Act (Ill. Rev. Stat., 1984 Supp., ch. 111½, pars. 6320 through 6325) does not expressly preclude repeated TASC evaluations at different stages of proceedings; however, by providing for evaluations at arrest and sentencing, the legislature appears to have expressed an intent that a defendant be evaluated either at arrest or at the time of sentencing. The purpose of section 23 is to inform a defendant of the availability of treatment as an alternative to sentencing. (*People v. Turner* (1985), 131 Ill. App. 3d 994, 996, 476 N.E.2d 766.) Such information would be unnecessary and meaningless if a defendant had already been found unacceptable for treatment by the program specified in section 23.

Moreover, the legislature cannot be deemed to have intended to provide a procedure by which defendants could delay or stretch proceedings by requesting repeated evaluations. After arrest and before trial Howard was informed of his possible eligibility and was evaluated to determine whether he was acceptable for treatment. The purpose of the statute was thus fulfilled and its requirements met.

Additionally, it is important to note that Howard did not request a second evaluation or advance any reason to the court as to why he should be reevaluated. Although defense counsel did mention at the first sentencing hearing that if Howard were to be reevaluated he would once again be found to be an addict, at no time did Howard or his counsel argue to the trial court that there was good cause not to follow TASC's previous recommendation; indeed, Howard has not demonstrated to this court a change in his circumstances which would justify a second TASC evaluation. He did not bring his desire for a second evaluation to the court's attention until after he had been sentenced, an indication that his objections to the sentencing procedure were born of the knowledge of the length of the sentence itself. We cannot endorse any such contrivance. If a defendant genuinely believes he has a meritorious argument supporting a request for a second evaluation it would be imposing no great burden on him to require that he make that argument to the sentencing judge in a timely manner. We hold that in this case the trial court did not err in relying upon Howard's post-arrest evaluation in sentencing him to the Illinois Department of Corrections.

■ Finally, Howard argues that the trial court relied upon inaccurate information regarding his past criminal history in sentencing him to seven years' imprisonment. The presentence investigative report lists only three felony convictions and no misdemeanors, but at the first sentencing hearing the State presented four felony and three misdemeanor convictions, and at the second hearing the State

presented five felony and nine misdemeanor convictions. At the second sentencing hearing Howard disputed the accuracy of the prosecutor's recitation of his criminal record. Howard also points to the fact that the trial judge sentenced him to 10 years' imprisonment at the first sentencing hearing and only seven years at the second hearing. He claims this difference in the sentences demonstrates the trial court's confusion as to his criminal record. Howard also argues that defense counsel was incompetent in failing to clarify his criminal record.

The State responds that there were no factual errors in its representation of Howard's criminal history. Howard denied that he had been convicted in 1975; however, the record clearly shows a burglary conviction in 1975, for which Howard was sentenced to a year and a day. Accordingly, defense counsel's failure to clarify the record cannot be said to have prejudiced Howard, as there obviously was nothing to clarify, and we cannot therefore assume that the judge was confused.

That the imposition of a sentence is within the discretion of the trial court cannot, at this late date, be gainsaid, and unless the record demonstrates an abuse of discretion, a reviewing court will conclude that the trial court considered only the appropriate factors in making its sentencing determination. (*People v. Poe* (1984), 121 Ill. App. 3d 457, 463, 459 N.E.2d 667; *People v. Jordan* (1974), 18 Ill. App. 3d 133, 139, 309 N.E.2d 274; *People v. Williams* (1970), 130 Ill. App. 2d 192, 199, 264 N.E.2d 589.) The permissible sentence for a burglary conviction, a Class II felony, is not less than three years' but not more than seven years' imprisonment. (Ill. Rev. Stat. 1983, ch. 38, pars. 19—1, 1005—8—1(a)(5).) There has been no showing on the basis of the record in this case that the trial court abused its discretion in sentencing Howard to the maximum permissible sentence.

For the forgoing reasons, the decision of the circuit court of Cook County is affirmed.

Affirmed.

STAMOS and BILANDIC, JJ., concur.