THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GERALD POWERS, Defendant-Appellant.

Second District    No. 2—92—0832

Opinion filed March 29, 1994.

G. Joseph Weller and Paul J. Glaser, both of State Appellate Defender's Office, of Elgin, for appellant.

Michael J. Waller, State's Attorney, of Waukegan, and Herbert Holzman, of Chicago (William L. Browers, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE QUETSCH delivered the opinion of the court:

Following a jury trial in the circuit court of Lake County, defendant, Gerald Powers, and a codefendant, Adam Harris, were convicted of armed robbery (Ill. Rev. Stat. 1985, ch. 38, par. 18—2(a) (now 720 ILCS 5/18—2(a) (West 1992))) and were both sentenced to 30 years' imprisonment. Defendant appealed, contending that he was not proved guilty beyond a reasonable doubt and that his sentence was excessive. We affirmed defendant's conviction and sentence. (*People v. Powers* (1987), 153 Ill. App. 3d 1163 (unpublished order under Supreme Court Rule 23).) Thereafter, defendant filed a petition under the Post-Conviction Hearing Act (Ill. Rev. Stat. 1989, ch. 38, par. 122—1 *et seq.* (now 725 ILCS 5/122—1 *et seq.* (West 1992))). In his post-conviction petition, defendant asserted that he was deprived of his right to the effective assistance of counsel at trial, since his attorney's simultaneous representation of codefendant Harris created an impermissible conflict of interest and prevented defendant from testifying on his own behalf. Following an evidentiary hearing, the circuit court denied the petition. Defendant now appeals.

The charges against defendant and Harris stemmed from the robbery of the J&L gas station on July 6, 1985. Anthony Smith was also charged with the robbery, but Smith pleaded guilty and testified on behalf of the State in exchange for an agreed sentence of eight years' imprisonment. Defendant and Harris retained attorney Eugene French to defend them. Initially, French also represented Smith, but the Lake County public defender was appointed to represent Smith prior to the negotiation of his plea agreement.

According to Smith's testimony, early in July 1985, Smith, Harris, and defendant discussed committing a robbery, and on July 6 they devised their plan to rob the J&L gas station. While defendant waited nearby in his car (a gray Datsun), Smith and Harris entered the gas station wearing masks and robbed the attendant at gunpoint.

After the robbery, Smith, Harris and defendant drove to a park where the gun and the masks were hidden, and the proceeds of the robbery were divided.

Witnesses observed a rusty gray two-door automobile with a black vinyl roof in the vicinity of the gas station near the time of the robbery. At the time of the robbery, defendant had the use of a friend's automobile, which was a rusty four-door gray Datsun. The vehicle did not have a vinyl roof.

A police officer who questioned defendant testified that defendant had denied any involvement in the robbery. Defendant told the officer that Smith had told defendant he intended to "do a gas station." Smith asked defendant to supply him with a gun, but defendant refused. Neither defendant nor Harris testified at trial. Both presented separate alibi defenses through other witnesses.

In his post-conviction petition, defendant alleged, *inter alia*, that he desired to testify at trial but attorney French told him he could not do so because his testimony would incriminate Harris, whom French was also representing. Defendant alleged that had French permitted him to take the stand, he would have denied any involvement in the robbery and would have testified, *inter alia*, that Harris invited him to participate in the robbery, but he refused. At a joint evidentiary hearing before Judge Raymond J. McKoski on defendant's post-conviction petition and a post-conviction petition filed by Harris, defendant testified that during the preparation of his defense he had informed French that he was not involved with the robbery. Defendant told French that Harris and Smith had asked him to participate in the robbery, but he refused. Defendant indicated that he wanted to testify, but French told him that he could not testify "if Adam Harris and [defendant] were in the same courtroom." French said neither defendant nor Harris could testify. Apparently, French indicated that he would attempt to have defendant's and Harris' trials severed. During trial, defendant asked French to call him to the stand, but French told him to "hold on" and reassured him that everything would "work out right."

The record reflects that subsequent to defendant's trial attorney French was found guilty or had pleaded guilty to several criminal offenses including felony and misdemeanor theft and false personation of a judicial official. French voluntarily withdrew from the roll of attorneys licensed to practice law in Illinois. At the evidentiary hearing on defendant's and Harris' post-conviction petitions, French testified that defendant had maintained his innocence. French denied that defendant had informed him that he had information implicating Harris. French testified that he told defendant that it was defendant's

choice whether to testify, and defendant chose not to testify. The circuit court concluded defendant's testimony was not credible and found that defendant "was not prevented from testifying by Mr. French." Based on this finding, the circuit court denied defendant's post-conviction petition. This appeal followed.

The State initially maintains that the doctrine of res judicata bars the relitigation of the conflict of interest issue in a post-conviction proceeding. The State also insists that the issue could have been raised in defendant's direct appeal and defendant's failure to do so constitutes a waiver of the issue. It is well established that the scope of post-conviction review is limited to constitutional matters which have not been and could not have been previously adjudicated. (People v. Winsett (1992), 153 Ill. 2d 335, 346; see also People v. Johnson (1993), 154 Ill. 2d 227, 233.) Where the petitioner in a post-conviction proceeding has previously taken a direct appeal from a judgment of conviction, the judgment of the reviewing court is res judicata as to all issues actually decided by the court, and any other claims that could have been presented to the reviewing court, if not presented, are waived. (People v. Flores (1992), 153 Ill. 2d 264, 274.) However, "[t]he waiver doctrine does not apply to issues raised in a post-conviction petition which stem from matters outside the record and which could not be brought on direct appeal." People v. Lee (1989), 185 Ill. App. 3d 420, 427; see also People v. Jackson (1990), 200 Ill. App. 3d 92, 100, aff'd (1992), 149 Ill. 2d 540.

Defendant's post-conviction petition seeks relief based on matters outside the trial record, namely, that his attorney, aware that defendant's version of the relevant events incriminated codefendant Harris, refused defendant's request to take the stand. However, the State points to other matters appearing in the trial record which it contends "should have alerted defendant's appellate counsel on direct appeal to the issue of ineffective assistance of counsel." We note that different standards govern claims of conflicts of interest in multiple representation, depending on when the issue is first raised. If counsel brings a potential conflict to the trial court's attention before or at an early stage of trial, "a duty devolves upon the trial court to either appoint separate counsel or to take adequate steps to ascertain whether the risk of conflict was too remote to warrant separate counsel." (People v. Spreitzer (1988), 123 Ill. 2d 1, 18, citing Holloway v. Arkansas (1978), 435 U.S. 475, 484, 55 L. Ed. 2d 426, 434, 98 S. Ct. 1173, 1178.) "If such steps are not taken, the fact of a 'potential or possible conflict may deprive the defendant of the guaranteed assistance of counsel.' " (Emphasis in original.) (Spreitzer, 123 Ill. 2d at 18, quoting People v. Jones (1988), 121 Ill. 2d 21, 28.) On the other hand,

if the trial court is not apprised of the potential conflict, then reversal of the conviction is proper only "upon a showing that 'an actual conflict of interest adversely affected' counsel's performance." (*Spreitzer*, 123 Ill. 2d at 18, quoting *Cuyler v. Sullivan* (1980), 446 U.S. 335, 350, 64 L. Ed. 2d 333, 348, 100 S. Ct. 1708, 1719.) This means that "the defendant must point to some specific defect in his counsel's strategy, tactics, or decision making attributable to the conflict." *Spreitzer*, 123 Ill. 2d at 18.

■ Mindful of these principles, we return to the State's waiver argument. Arguing that the conflict of interest issue could have been raised on appeal, the State first notes that prior to trial the prosecution raised the possibility of a conflict of interest since there had been preliminary discussions about a plea bargain for Harris which would require Harris to testify against defendant. However, attorney French specifically advised the trial court that he saw no conflict in this respect because Harris had "no testimony that he can give against Mr. Powers." The trial court was entitled to rely upon French's representation that no conflict existed. (See *Holloway v. Arkansas* (1978), 435 U.S. 475, 486 n.9, 55 L. Ed. 2d 426, 435 n.9, 98 S. Ct. 1173, 1179 n.9.) The State further notes that French moved to have defendant's and Harris' trials severed and raised the trial court's denial of the severance motion as an issue in defendant's post-trial motion. While French requested separate trials, he never suggested in any way that a potential or actual conflict of interest existed in his joint representation of defendant and Harris, and in no way alluded to the facts forming the basis of defendant's request for post-conviction relief. Indeed, French identified no specific facts or circumstances whatsoever in support of the severance motion.

We recognize that the circumstances which make separate trials appropriate will, in many if not the majority of cases, also establish a conflict of interest in joint representation. The two common situations in which defendants will be prejudiced by a joint trial are: (1) where a nontestifying codefendant has made out-of-court admissions that implicate the defendant, in which case the latter's sixth amendment right of confrontation may be violated; and (2) where the defendants may present defenses that are so antagonistic that it is unfair to try them together. (*People v. King* (1993), 252 Ill. App. 3d 334, 340-41.) In both situations, joint representation would give rise to a conflict of interest. (See *People v. Jones* (1988), 121 Ill. 2d 21, 34 (where nontestifying codefendant Ross' out-of-court statement implicated defendant Mosley, "[t]he joint representation of the two defendants *in one trial* created a clear conflict as to Mosley" (emphasis added)); *People v. Hodge* (1993), 250 Ill. App. 3d 736, 750 (" 'Actual' conflicts of interest

have been found in joint trials where the same attorney represented two codefendants with antagonistic defenses").) Even so, we do not believe that a trial court must necessarily view a bare request for a severance as implicitly raising a potential conflict of interest where there is no mention of a possible conflict arising from joint representation and no factual basis is given in support of the request. It is presumed that defense attorneys can be depended upon to bring potential conflicts to the trial court's attention. "Absent special circumstances, therefore, trial courts may assume either that multiple representation entails no conflict or that the lawyer and his clients knowingly accept such risk of conflict as may exist." (*Cuyler v. Sullivan* (1980), 446 U.S. 335, 346-47, 64 L. Ed. 2d 333, 345-46, 100 S. Ct. 1708, 1717.) Even to the extent that the bare request for a severance here might have represented attorney French's veiled effort to alert the trial court to a conflict of interest in joint representation, the trial court was not required to recognize it as such.

Finally, the State notes that during his sentencing hearing defendant remarked that he could have proved his innocence if he had been tried separately. Defendant stated "I could have testified myself if—and my sister could have testified too, to the fact [*sic*] in the case, but there are circumstances that kept us from doing this, and we couldn't bring them out." While these comments might create the suspicion of a conflict of interest, they were not sufficiently specific to support an appellate argument in defendant's direct appeal. For precisely that reason, a post-conviction proceeding is appropriate to develop the record in this regard.

We therefore agree with defendant that appellate counsel could not have raised on appeal the specific conflict of interest that defendant identified in his post-conviction petition and could not otherwise have successfully pursued a conflict of interest argument in his direct appeal.

Turning to the merits of defendant's argument, we initially note that defendant treats the matters of trial counsel's conflict of interest due to joint representation and the infringement of defendant's right to testify as a single constitutional violation. In essence, defendant's contention is that the conflict of interest manifested itself at trial (albeit not in the trial record) in trial counsel's alleged refusal to permit defendant to testify. However, the denial of a defendant's right to testify can be a constitutional violation in and of itself, since a criminal defendant's prerogative to testify is a fundamental right which only the defendant may waive, and "the question of the exercise of that right is thus not a matter of a strategic or tactical decision best left to trial counsel." (*People v. Daniels* (1992), 230 Ill.

App. 3d 527, 535; *People v. Dredge* (1986), 148 Ill. App. 3d 911, 913.) If a violation of defendant's right to testify occurred, it would seem to be irrelevant whether it was the result of a conflict of interest. Likewise, with respect to a defendant's sixth amendment rights, criminal defendants are entitled to rely on the judgment of their attorneys, and if a defendant demonstrates that an actual conflict of interest adversely affected his or her attorney's performance, it is irrelevant whether the attorney's action or inaction was somehow against the defendant's will. For purposes of clarity, we consider the issues separately.

■ With respect to whether attorney French improperly prevented defendant from testifying, the evidence at the post-conviction hearing was conflicting and Judge McKoski resolved the question against defendant, specifically finding that French did not prevent defendant from testifying. In essence, Judge McKoski concluded that, in view of the relative advantages and disadvantages of testifying at trial, it was likely that defendant would have voluntarily decided to refrain from testifying. On this basis, Judge McKoski apparently discredited defendant's account that he wanted to testify but was prevented from doing so by attorney French.

Defendant acknowledges that had Judge McKoski simply found French to be more credible than defendant, there would be no basis to challenge that determination. However, defendant notes that Judge McKoski indicated that he found neither defendant nor attorney French to be credible, and he based his finding on his view of which witness' account was more consistent with the trial record. Defendant suggests that Judge McKoski's assessment in this respect was demonstrably incorrect. Defendant notes that French, who claimed to have been unable to locate his file for the case, did not recall whether the State had made any plea offers and did not recall a discussion in court prior to trial about the possibility of a conflict of interest arising from plea negotiations with Harris. French also did not recall that he had briefly represented Anthony Smith before the Lake County public defender was appointed to represent Smith. However, neither detail is particularly germane in view of the reasoning Judge McKoski employed in reaching his conclusion. As noted above, Judge McKoski essentially concluded that, based on the trial record, it was unlikely that defendant would have insisted on testifying as he claimed. Whether French's testimony or recollection about the matters noted by defendant was consistent with the record has no bearing on that conclusion.

Defendant also argues that Judge McKoski was influenced by his mistaken belief that defendant had retained attorney French in

previous matters. Defendant contends that French had previously represented Harris, rather than defendant. However, French plainly testified that he had represented defendant in a previous criminal case. Judge McKoski was not mistaken in this regard. Accordingly, the trial court's conclusion that no violation of defendant's right to testify occurred is not manifestly erroneous. *People v. Griffin* (1985), 109 Ill. 2d 293, 303.

We turn now to defendant's principal claim of error: that he was deprived of the effective assistance of counsel because of a conflict of interest resulting from the joint representation of defendant and co-defendant Harris. "The right of a criminal defendant to effective assistance of counsel has long been recognized to include the right to the 'undivided loyalty of counsel, free from conflicting interests or inconsistent obligations.' " (*People v. Walker* (1993), 253 Ill. App. 3d 93, 107, quoting *People v. Flores* (1989), 128 Ill. 2d 66, 83.) While an attorney's representation of multiple defendants with hostile interests will constitute a denial of the right to effective assistance of counsel, the mere fact of joint representation does not constitute a *per se* violation of that right. (*People v. Dockery* (1993), 248 Ill. App. 3d 59, 65.) As noted earlier, where the trial court is not advised of a potential or possible conflict at an early stage:

"a defendant must demonstrate that 'an actual conflict of interest adversely affected his lawyer's performance' [citation], by 'point[ing] to some specific defect in his counsel's strategy, tactics, or decision making attributable to the conflict.' [Citation.] In order to satisfy this burden, a defendant must allege more than mere hypothetical or speculative conflicts [citations], and the record must demonstrate that the defense was inhibited by the joint representation." *Dockery*, 248 Ill. App. 3d at 65-66.

Defendant argues that his defense was inhibited because attorney French was unable to present defendant's testimony, which would have implicated Harris, without violating his obligations as Harris' attorney. Because his trial strategy options were constrained in this manner, defendant argues that he was deprived of the effective assistance of counsel.

These principles are qualified by the well-established rule in Illinois that the mere availability of a strategy that would have helped one defendant at the expense of another does not create hostility between the interests of criminal defendants. (*E.g., People v. Echols* (1978), 74 Ill. 2d 319, 328; *People v. Hodge* (1993), 250 Ill. App. 3d 736, 750-51; *People v. Dockery*, 248 Ill. App. 3d at 66; *People v. Sanders* (1991), 209 Ill. App. 3d 366, 374; *People v. Howard* (1988), 166 Ill. App. 3d 328, 333-34; *People v. Conley* (1983), 118 Ill. App. 3d 122,

129; *People v. Martinez* (1982), 104 Ill. App. 3d 990, 994; *People v. Canales* (1980), 86 Ill. App. 3d 738, 743-44.) We believe this rule is applicable here.

In *People v. Echols* (1978), 74 Ill. 2d 319, defendant, Johnny Wilson, and two codefendants, brothers Kenneth and William Echols, were jointly represented by the public defender in a prosecution for the burglary of a tavern. No accountability instruction was given, so in order to find a particular defendant guilty, the jury had to conclude that that defendant entered the tavern. On appeal, Wilson asserted three examples of hostility between his best interests and those of his codefendants. First, defendant contended that counsel with undivided loyalty would have pursued a defense emphasizing that clothing descriptions given by eyewitnesses indicated that the Echols brothers committed the burglary rather than Wilson. Our supreme court responded:

> "While we agree that it is possible that an independent attorney might have pursued precisely such a strategy, it is also possible that he would have acted no differently than did the public defender in this case, lest he risk the introduction of rebuttal evidence which would have justified the giving of the accountability instruction rejected by the trial court in this case. In short, we do not know what strategy independent counsel would have pursued, and this court has in the past refused to find hostility between the interests of criminal co-defendants based on the mere possibility that one strategy available to defense counsel would have helped one defendant at the expense of another." (*Echols*, 74 Ill. 2d at 327-28.)

The *Echols* court similarly rejected Wilson's argument that hostility of interests was apparent because defense counsel was prevented from arguing that the evidence demonstrated that a tape player, which was stolen from the tavern and found in the trunk of the automobile in which the defendants were riding when they were arrested, was placed in the trunk by one of Wilson's codefendants. Again the court concluded that the mere availability of this strategy did not demonstrate hostility.

However, the *Echols* court found Wilson's third example of hostility to be persuasive. Kenneth Echols' fingerprint was found on a piece of a broken window, but the police officer who took the defendants' fingerprints after their arrest mistakenly pointed to Wilson as the person whose fingerprint matched the one found on the window. The public defender did not seek to clear up the mistaken identification, but instead argued to the jury that the confusion about the fingerprint limited its probative value. The supreme court stated

that "[o]nce the confusion occurred regarding the fingerprint, [Wilson's] interests and those of the Echols brothers diverged dramatically. It requires no speculation to reach the conclusion that competent, independent counsel would have advised [Wilson] to resolve that confusion, and would have argued in closing that, on balance, given all of the evidence, [Wilson] never entered the tavern." *Echols*, 74 Ill. 2d at 328.

In *People v. Howard* (1988), 166 Ill. App. 3d 328, the defendant convicted of burglary argued that a conflict of interest existed because the best defense available to him was voluntary intoxication, negating the specific intent necessary for a burglary conviction, but his attorney was precluded from asserting that defense because of his obligations to a codefendant. Citing *Echols*, the court held that the "mere possibility" that independent counsel would have presented the affirmative defense of voluntary intoxication did not establish a conflict of interest. 166 Ill. App. 3d at 333-34.

The same principles have been applied in cases where, as here, the accused claimed that the decision whether or not to testify was affected by a conflict of interest. For instance, in *People v. Martinez* (1982), 104 Ill. App. 3d 990, one of the defendant's attorneys had previously represented Vincent McCabe, the principal witness against defendant, in connection with McCabe's appearance before the grand jury. In his grand jury testimony, McCabe denied any knowledge of the offense, but at the defendant's trial McCabe (no longer represented by defendant's attorney) retracted his earlier denials and testified against the defendant. The defense presented no witnesses. In his post-conviction petition the defendant contended that despite his protests he was not called to testify in his own defense, and the decision was dictated by his attorney's loyalty to McCabe. The court noted that there was no evidence of a continuing loyalty to McCabe, but also rejected the argument under the principles of *Echols*, noting that "[t]he decision to offer no defense was a reasonable tactical decision. This court may not speculate whether independent counsel would have made the same decision." 104 Ill. App. 3d at 994; see also *People v. Sanders* (1991), 209 Ill. App. 3d 366, 374-75 (counsel's failure to call defendant convicted of murder under accountability theory did not demonstrate a conflict of interest although defendant argued that by testifying he might have advanced a defense of "nonaccountability," showing that he was "exceedingly less culpable" than jointly represented codefendant).

■ In the case at bar, even assuming, as defendant alleges in his post-conviction petition, that defendant told attorney French he was not involved in the robbery and had declined Harris' invitation to

participate in the robbery, we can still only speculate whether independent counsel would have advised defendant to testify. Accordingly, under the authority of the decisions discussed above, defendant has failed to establish hostility constituting an actual conflict of interest. Defendant's request for post-conviction relief was properly denied.

If we were writing on a clean slate, it is possible we would choose a different rule. The guiding principle in cases where a conflict of interest has been alleged, as set forth in *Cuyler v. Sullivan* (1980), 446 U.S. 335, 350, 64 L. Ed. 2d 333, 348, 100 S. Ct. 1708, 1719, is that "a defendant must establish that an actual conflict of interest adversely affected his lawyer's performance." It has been noted, however, that "actual conflict" and "adverse effect" are not self-defining phrases. (*United States v. Bowie* (10th Cir. 1990), 892 F.2d 1494, 1500.) Concurring in part and dissenting in part in *Cuyler*, Justice Marshall expressed uncertainty as to the operation of the test set forth in the majority opinion:

> "If the Court's holding would require a defendant to demonstrate that his attorney's trial performance differed from what it would have been if the defendant had been the attorney's only client, I believe it is inconsistent with our previous cases. Such a test is not only unduly harsh, but incurably speculative as well." (*Cuyler*, 446 U.S. at 355, 64 L. Ed. 2d at 351, 100 S. Ct. at 1721 (Marshall, J., concurring in part and dissenting in part).)

On the other hand, Justice Marshall observed:

> "It is possible that the standard articulated by the Court may not require a defendant to demonstrate that his attorney chose an action adverse to his interests because of a conflicting duty to another client. Arguably, if the attorney had to make decisions concerning his representation of the defendant under the constraint of inconsistent duties imposed by an actual conflict of interests, the adequacy of the representation was adversely affected. [Citation.] If that is the case, the Court's view and mine may not be so far apart after all." 446 U.S. at 358, 64 L. Ed. 2d at 352-53, 100 S. Ct. at 1723 (Marshall, J., concurring in part and dissenting in part).

Ten years after *Cuyler* was decided, Justice Marshall noted that doubt remained as to the operation of the "adverse effect" requirement, commenting that "[t]his Court has never squarely resolved the question whether proof of adverse effect is required to overturn a conviction once an actual conflict is proved. *** [*Cuyler*] left unclear *** whether an actual conflict should be presumed to have an adverse effect, or whether a defendant must prove *both* an actual conflict *and* an adverse effect." (Emphasis in original.) *Bonin v. California* (1990), 494 U.S. 1039, 1043, 108 L. Ed. 2d 641, 643-44, 110 S. Ct. 1506, 1508 (Marshall, J., dissenting from denial of *certiorari*).

As discussed above, under *Echols* and its progeny the mere fact that joint representation forecloses possible defense strategies does not establish a constitutional violation. Instead the focus of the court's inquiry is whether counsel with no obligations to a codefendant would have *actually* employed a different strategy or tactics, and where speculation is necessary as to whether independent counsel would have acted differently, the uncertainty is resolved against the defendant. This focus on ultimate decisions rather than the decision-making process is in accord with Justice Marshall's first interpretation of the *Cuyler* "adverse effect" standard.

However, a number of Federal court decisions have approached the problem by considering the extent to which the defendant's tactical options were limited by his attorney's other interests or obligations to other clients. In *United States v. Gambino* (3d Cir. 1988), 864 F.2d 1064, the United States Court of Appeals for the Third Circuit adopted the test announced by the United States Court of Appeals for the First Circuit in *United States v. Fahey* (1st Cir. 1985), 769 F.2d 829:

> " 'In order to establish an actual conflict the petitioner must show two elements. First, he must demonstrate that some plausible alternative defense strategy or tactic might have been pursued. He need not show that the defense would necessarily have been successful if it had been used, but that it possessed sufficient substance to be a viable alternative. Second, he must establish that the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests.' "
> (*Gambino*, 864 F.2d at 1070, quoting *Fahey*, 769 F.2d at 836.)

Expounding on the *Fahey* test, the *Gambino* court observed:

> "Clearly, a defendant who establishes that his attorney rejected a plausible defense because it conflicted with the interests of another client establishes not only an actual conflict but the adverse effects of it. Consequently, the test set forth in *United States v. Fahey* includes both the actual conflict and adverse effects prongs of the conflict of interest analysis." 864 F.2d at 1070-71.

The United States Court of Appeals for the Second Circuit cited *Fahey* and *Gambino* favorably in *Winkler v. Keane* (2d Cir. 1993), 7 F.3d 304, 309. Similarly, the United States Court of Appeals for the Tenth Circuit has stated that defense counsel's performance is adversely affected by an actual conflict of interest "if a specific and seemingly valid or genuine alternative strategy or tactic was available to defense counsel, but it was inherently in conflict with his duties to others or to his own personal interests." (*United States v. Bowie* (10th Cir. 1990), 892 F.2d 1494, 1500.) Likewise, in *United States ex rel. Gray v. Director, Department of Corrections* (7th Cir.

1983), 721 F.2d 586, 597, it was observed that "[t]he test for conflict between defendants is not whether the defenses actually chosen by them are consistent but whether *in making the choice* of defenses the interests of the defendants were in conflict." (Emphasis in original.) In *Gray*, the court found it significant that an independent attorney would have "carefully considered" cooperation with the State as a means of avoiding prosecution of his client, but could not do so because of obligations to a codefendant. 721 F.2d at 596-97.

Reflecting similar reasoning, and of particular relevance here, in *United States ex rel. Williams v. Franzen* (N.D. Ill. 1981), 531 F. Supp. 292, 296, *aff'd* (7th Cir. 1982), 687 F.2d 944, the court stated that "[i]n any case where two or more defendants have inconsistent stories relating to the crime charged, joint representation is impermissible. [Citation.] This is particularly true where one of the defendants is prevented by counsel from taking the stand because of possible prejudice to a co-defendant, or counsel is precluded from cross-examination or impeachment because of conflicting loyalties."

Under the principles set forth in these decisions, defendant's allegation that he informed attorney French that Harris had asked him to participate in the robbery, if true, would establish a violation of defendant's right to the effective assistance of counsel. Whether or not a conflict-free attorney would have advised defendant to testify, it was undeniably a "plausible," "genuine," or "valid" strategic alternative to presenting an alibi defense solely through the testimony of other witnesses. However, the option of presenting defendant's testimony was inherently in conflict with French's obligations to Harris, because there was at least a serious risk that defendant's testimony would implicate Harris.

Nonetheless, however sound these Federal decisions may be, they appear to be incompatible with the decisions of our supreme court and the appellate court which, as previously discussed, require that the judgment of the circuit court be affirmed. The time may now be at hand, however, for our supreme court to take a fresh look at the issue.

For the foregoing reasons, the judgment of the circuit court of Lake County is affirmed.

Affirmed.

GEIGER and BOWMAN, JJ., concur.