THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RAFAEL HERNANDEZ, Defendant-Appellant.

First District (1st Division)    No. 1—03—0943

Opinion filed March 29, 2004.—Rehearing denied August 4, 2004.

Michael J. Pelletier and Bonnie Kim, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, James Fitzgerald, and Kevin Frey, Assistant State's Attorneys, of counsel), for the People.

JUSTICE GORDON delivered the opinion of the court:

Following a jury trial, defendant Rafael Hernandez was convicted of first-degree murder and three counts of attempted first-degree murder, and sentenced to concurrent prison terms of 40 and 30 years, respectively. Defendant's conviction was affirmed on direct appeal. *People v. Hernandez*, No. 1—00—0142 (February 13, 2002) (unpublished order under Supreme Court Rule 23). Defendant subsequently filed a *pro se* postconviction petition, which was summarily dismissed by the trial court. Defendant now appeals the dismissal of his postconviction petition, contending that he was rendered ineffective assistance of counsel by his trial attorney's usurpation of defendant's fundamental right to decide whether to testify at trial. For the reasons stated below, we affirm the dismissal of defendant's postconviction petition.

## BACKGROUND

Because the facts of this case were set out in detail in our order deciding defendant's direct appeal (*Hernandez*, slip op. at 2-9), we will only briefly summarize them here.

At trial, the State presented evidence that defendant, an admitted member of the Latin Kings street gang, approached a car driving through the intersection of Campbell and Balmoral Avenues in Chicago and asked the occupants, Isaac Soberon, Khaled El-Helo, Joe DeClet and Mike Kowalski, whether they were affiliated with a gang. A short while later, defendant's fellow gang member, Anthony Clark, ran to the car from behind some nearby trees and fired at its occupants, killing Soberon. The defense's theory of the case was that defendant was not accountable for Clark's wrongdoing because defendant was not acting in concert with Clark.

At trial, complainants El-Helo, DeClet and Kowalski testified that on June 25, 1998, at about 2 a.m., they, along with Soberon, were riding in El-Helo's convertible and El-Helo was driving. As they were driving through the intersection of Campbell and Balmoral, defendant and some other men approached the car from behind some trees. Defendant flashed gang signs and yelled, "What's up, folks." DeClet and Kowalski answered that they were not gang-affiliated. Defendant yelled, "We're Kings, we're King love." After El-Helo drove past defendant, the complainants heard several shots fired. DeClet was able to see the shooter, who ran in the direction of the car as he fired. The shooter was not defendant. One of the bullets struck Soberon in the head and he died as a result of the wound. The caliber of the bullet recovered from Soberon matched that of the casings found at the scene of the shooting. The complainants each identified defendant as the person who initially approached the car.

A few weeks later, defendant was arrested. At the police station, defendant gave a statement to Assistant State's Attorney (ASA) Karen Kerbis, in which he stated that he was a member of the Latin Kings and that, on the night of the offense, he and three other Latin Kings planned to avenge the death of a fellow gang member. Defendant stated that he asked Clark for a gun so that he could spot and shoot some rival gang members, but Clark refused to give it to him. Defendant stated that if he had had the gun, he would have made sure that he shot a rival gang member and not an innocent bystander. Defendant stated that he was standing on the corner of Campbell and Balmoral when he saw a car turn onto Balmoral. Defendant approached the car and asked whether the occupants were affiliated with a gang. None of the occupants showed signs of gang membership. The car proceeded down Balmoral to the alley and turned left. A short while later, Clark fired at the car.

A Chicago police department gangs investigator testified that when a Latin King is killed by a member of a rival gang, the Latin Kings would retaliate by going out and killing a member of the rival gang. The investigator averred that defendant's tattoos identified him as a Latin King, and he testified that the intersection where the shooting took place was in rival gang territory.

Defendant took the stand in his own behalf in his case in chief. He admitted to being a member of the Latin Kings and stated that he had been a member for about four years. Defendant testified that he was standing at the corner of Campbell and Balmoral on the date and time in question. He saw a car coming towards him, and as the car came by he yelled, "What's up, folks." He stated that a few seconds after the car drove off, he heard someone shout, "King love," and then gunshots. He ran away at the sound of gunfire. Defendant claimed that he did not agree to shoot anyone that day, did not handle a gun at that time and did not know that Clark had a gun. Defendant also testified that his postarrest statement was a product of police coercion, consisting of physical abuse, threats and promises that he would be able to go home if he confessed to the offense.[1]

Rebuttal witness Detective Mannion testified that defendant was read his *Miranda* rights and was not coerced by police during interrogation. ASA Kerbis also testified in rebuttal and stated that she read defendant his *Miranda* rights prior to taking his written statement and gave him an opportunity to discuss the treatment he received while in custody, outside the presence of the police. She also contradicted defendant's testimony that he told her he had been mistreated.

The jury found defendant guilty of first-degree murder and three counts of attempted first-degree murder. He was sentenced to a term of 40 years for first-degree murder and 30 years for each charge of attempted first-degree murder, all sentences to run concurrently with one another.

On direct appeal, defendant argued that the trial court should have excluded unauthenticated photographs and improper hearsay testimony, that the State made improper statements during closing argument, and that his sentence was excessive. This court affirmed his conviction and sentence in an unpublished opinion. *Hernandez*, slip op. at 25-26. On June 30, 2002, the Illinois Supreme Court denied defendant's petition for leave to appeal.

On December 21, 2003, defendant filed a *pro se* petition for post-conviction relief, alleging, among other claims, that his trial attorney

---

[1]Defendant's pretrial motion to suppress his statement was denied.

was ineffective for depriving him of his right to determine for himself whether he would testify at trial. In support of the petition, defendant provided his own affidavit, which states in relevant part:

"3. That my attorney SPD Anthony Thomas told me prior to trial that the process would allow me the right to present a defense against the charges of first degree murder, that the case rested upon the state and not on the defendant.

4. That I never descussed [sic], agreed, or consented to my counsel SPD Anthony Thomas to enter into any negotiation, or plea based on any possibility that I would testify in my own behalf.

5. That my SPD Anthony Thomas never descussed [sic] with me that I had to testify in my own behalf until the defense was put to proof of defending against the states [sic] charges."

On January 10, 2003, the trial judge summarily dismissed defendant's postconviction petition as being without merit and frivolous. Defendant now appeals.

## ANALYSIS

Defendant's sole claim on appeal is that the trial judge erred in summarily dismissing his *pro se* postconviction petition because defendant did raise a gist of a constitutional claim that he was deprived of his sixth amendment right to the effective assistance of counsel by his trial attorney's "usurpation of [defendant's] fundamental right to decide whether to testify." Defendant alleges that his attorney, without discussing the matter with defendant, told the judge that defendant would testify and then adopted a trial strategy that left defendant no option but to testify.

The State responds that summary dismissal of the petition was proper on two grounds: (1) defendant failed to file a legally sufficient petition as required by section 122—2 of the Post-Conviction Hearing Act (hereinafter, the Act) (725 ILCS 5/122—1 *et seq.* (West 2002)) because he failed to provide adequate documentation in support of his petition; and (2) defendant cannot present a gist of a constitutional claim with respect to the alleged violation of his sixth amendment right to the effective assistance of counsel.

The Act provides a defendant with a means through which he can challenge his conviction or sentence for violations of federal or state constitutional rights. 725 ILCS 5/122—1 *et seq.* (West 2002); *People v. Tenner*, 175 Ill. 2d 372, 377, 677 N.E.2d 859, 862 (1997). An action seeking postconviction relief is a collateral proceeding and not an appeal from an earlier judgment. *People v. Williams*, 186 Ill. 2d 55, 62, 708 N.E.2d 1152, 1155 (1999). In order for a defendant to receive post-conviction relief under the Act, he must file a petition in the trial court that convicted him. 725 ILCS 5/122—1(b) (West 2002).

The Act establishes a three-stage process for adjudicating a post-conviction petition. *People v. Edwards*, 197 Ill. 2d 239, 244, 757 N.E.2d 442, 445 (2001). At the first stage, the court determines whether the petition's allegations sufficiently demonstrate a constitutional infirmity that would necessitate relief under the Act. *People v. Coleman*, 183 Ill. 2d 366, 380, 701 N.E.2d 1063, 1071 (1998). All well-pled allegations are taken as true, unless contradicted by the record. *Coleman*, 183 Ill. 2d at 381-82, 701 N.E.2d at 1072. A trial court's dismissal of a postconviction petition is reviewed *de novo*. *Coleman*, 183 Ill. 2d at 388-89, 701 N.E.2d at 1075.

■ The instant case involves a first-stage dismissal. A postconviction petition may not be summarily dismissed at the first stage, prior to the appointment of counsel, unless it is frivolous or patently without merit. 725 ILCS 5/122—2.1(a)(2) (West 2002). "A [*pro se*] post-conviction petition is considered frivolous or patently without merit only if the allegations in the petition, taken as true and liberally construed, fail to present the 'gist of a constitutional claim.' " *Edwards*, 197 Ill. 2d at 244, 757 N.E.2d at 445, quoting *People v. Gaultney*, 174 Ill. 2d 410, 418, 675 N.E.2d 102, 106 (1996). The "gist" standard is a low threshold, and a *pro se* petitioner need only present a limited amount of detail. *Edwards*, 197 Ill. 2d at 244, 757 N.E.2d at 445. A defendant is not required at this stage to set forth the claim in its entirety or to include legal arguments or citations to legal authority. *Edwards*, 197 Ill. 2d at 244, 757 N.E.2d at 445. However, the petition must have attached to it "affidavits, records, or other evidence supporting its allegations or shall state why the same are not attached." 725 ILCS 5/122—2 (West 2002).

■ We will first address the State's argument that defendant failed to file a legally sufficient petition under section 122—2 of the Act because he failed to provide adequate documentation in support of his petition. The State asserts that the only support defendant provided was his own affidavit in which he claimed, "[t]hat my SPD Anthony Thomas never descussed [*sic*] with me that I had to testify in my own behalf until the defense was put to proof of defending against the states [*sic*] charges." The State argues that under *People v. Collins*, 202 Ill. 2d 59, 66-69, 782 N.E.2d 195, 198-200 (2002), defendant, in addition to his affidavit, must provide other corroborating evidence or explain its absence, and that the failure to do so renders the petition legally insufficient and justifies summary dismissal. The State contends that summary dismissal of the petition was proper because defendant neither provided extrinsic evidence to corroborate the allegations in his petition nor explained the absence of such corroborating evidence.

Defendant responds that the State's position requires more from a *pro se* petitioner than the Act contemplates. Defendant argues that he was only required at this stage in the proceedings to attest that his attorney usurped his decision as to whether to testify. In support, defendant relies on *Edwards*, 197 Ill. 2d at 257-58, 757 N.E.2d at 452-53 (where defendant alleged that counsel was ineffective for failure to file an appeal after he had asked that counsel do so, petition was not frivolous or patently without merit), and *People v. Dredge*, 148 Ill. App. 3d 911, 913, 500 N.E.2d 445, 447 (1986) (*pro se* verified petition for postconviction relief should not have been summarily dismissed by the trial court, where the defendant alleged that she was deprived of her right to testify at her trial and that allegation was not contradicted by the record). Defendant further argues that no legal authority supports the State's contention that his affidavit alone is not sufficient to support his claim and that he needs a third party's affidavit to corroborate his claim. Moreover, defendant argues that *Collins* is distinguishable from the instant case because in *Collins* the defendant included no affidavits, and for that reason the court found that the postconviction petition lacked the supporting documentation necessary to merit second-stage review (*Collins*, 202 Ill. 2d at 69, 782 N.E.2d at 200), whereas in the instant case, defendant did file an affidavit attesting to the veracity of his claim.

We first note that defendant's reliance on *Edwards* is misplaced because *Edwards* is inapplicable to the determination of whether the requirements of section 122—2 of the Act were met. *Collins*, 202 Ill. 2d at 69, 782 N.E.2d at 200 (*Edwards* has no application to the issue of sufficiency of petition's supporting documentation required by section 122—2).

Secondly, the holding of *Dredge* is suspect in light of *Collins*, insofar as *Dredge* holds that a verified petition stated in conclusory terms and not supported by an affidavit or other evidence is sufficient to move beyond the first stage of postconviction proceedings. In *Collins*, our supreme court held that a defendant's sworn verification did not serve as a substitute for the "affidavits, records, or other evidence" mandated by the Act, and the failure to either attach to a postconviction petition such affidavits, records, or other evidence or explain their absence was fatal to the petition and by itself justified summary dismissal. *Collins*, 202 Ill. 2d at 66-69, 782 N.E.2d at 198-200. We disagree with defendant's argument that *Collins* is distinguishable because, in the instant case, defendant provided an affidavit in support of his petition. However, even if we accept the State's interpreta-

tion of *Collins*,[2] the facts in the instant case do conform with the requirements imposed by *Collins*. *Collins* acknowledged the continued validity of the holding in *People v. Williams*, 47 Ill. 2d 1, 4, 264 N.E.2d 697, 698 (1970), which did not require the submission of extrinsic evidence to corroborate the defendant's allegations or an explanation of the absence of such evidence if, as is the case here, the petition contains facts from which a court can easily infer that " 'the only affidavit that defendant could possibly have furnished, other than his own sworn statement, would have been that of his attorney.' " *Collins*, 202 Ill. 2d at 68, 782 N.E.2d at 199, quoting *Williams*, 47 Ill. 2d at 4, 264 N.E.2d at 698.

The facts in the instant case are closely analogous to those in *Williams*. As previously noted, defendant in the instant case alleged that his attorney, without discussing the matter with defendant, told the judge that defendant would testify and then adopted a trial strategy that left defendant no option but to testify. Any further verification of these allegations would have to come from defendant's attorney. However, as was pointed out in *Williams*, "[t]he difficulty or impossibility of obtaining such an affidavit is self-apparent." *Williams*, 47 Ill. 2d at 4, 264 N.E.2d at 698. Even the State concedes in its brief that "[p]etitioner's trial counsel would probably not admit to their [*sic*] own incompetence in an affidavit." Accordingly, we find that under the facts of this case, defendant did not need to provide other evidence to corroborate the allegations in his petition or explain the absence of such evidence.

The State next contends that the petition is still insufficient under section 122—2 because it does not allege that defendant was coerced or forced to testify when he did not so wish. Moreover, the State contends that defendant did not provide an affidavit from a family member, friend, or other acquaintance vouching for the fact that defendant was coerced or forced to testify against his wishes. These contentions must fail, however, because coercion or force is not the basis of defendant's argument—defendant does not contend that he was forced or coerced to testify but, rather, that he was deprived of the right to choose whether to testify at trial. It is this contention that we, therefore, must address.

Defendant claims that his attorney unilaterally decided that defendant would testify without discussing the matter with him, and

---

[2]We note that while there is some dispute as to whether *Collins* has been implicitly overruled by *People v. Boclair*, 202 Ill. 2d 89, 789 N.E.2d 734 (2002), we do not need to address this issue because the submissions in support of the petition in the instant case conform with the requirements of *Collins*.

in doing so, he deprived defendant of his fundamental right to determine for himself whether or not to testify at trial. Defendant thus appears to argue on appeal that his petition raised a gist of a constitutional claim on two grounds: (1) violation of his fundamental right to choose whether to testify in his own behalf, and (2) violation of his sixth amendment right to the effective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 686, 80 L. Ed. 2d 674, 692, 104 S. Ct. 2052, 2063 (1984). For the reasons that follow, defendant's claim, under the facts of this case, falls solely under the *Strickland* framework.

In support of his claim, defendant relies on *Dredge, People v. Powers*, 260 Ill. App. 3d 163, 168, 631 N.E.2d 862, 867 (1994), and *Strickland*. In *Dredge*, the defendant's postconviction petition contained a claim that her trial attorney was ineffective for depriving her of the right to testify at her trial. *Dredge*, 148 Ill. App. 3d at 912, 500 N.E.2d at 446. The court in that case stated that it was generally recognized that a defendant's prerogative to testify at trial is a fundamental right, and whether to exercise that right "is not one of those matters which is considered a strategic or tactical decision best left to trial counsel." *Dredge*, 148 Ill. App. 3d at 913, 500 N.E.2d at 447, citing *Jones v. Barnes*, 463 U.S. 745, 751, 77 L. Ed. 2d 987, 993, 103 S. Ct. 3308, 3312 (1983), *People v. Campbell*, 129 Ill. App. 3d 819, 821, 473 N.E.2d 129, 131 (1984), and 2 W. LaFave & J. Israel, Criminal Procedure § 11.6 at 53 (1984).

In *Powers*, the court likewise stated:

"[T]he denial of a defendant's right to testify can be a constitutional violation in and of itself, since a criminal defendant's prerogative to testify is a fundamental right which only the defendant may waive, and 'the question of the exercise of that right is *** not a matter of a strategic or tactical decision best left to trial counsel.' " *Powers*, 260 Ill. App. 3d at 168, 631 N.E.2d at 867, quoting *People v. Daniels*, 230 Ill. App. 3d 527, 535, 595 N.E.2d 83, 89 (1992).

Furthermore, defendant asserts that a criminal defendant has a constitutional right under the sixth amendment to have an effective lawyer represent him. *Strickland*, 466 U.S. at 686, 80 L. Ed. 2d at 692, 104 S. Ct. at 2063. To prevail on a claim of ineffective assistance of counsel, a defendant must show that his attorney's performance fell below an objective standard of reasonableness and that the deficient performance so prejudiced the defense as to deny the defendant a fair trial. *Strickland*, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064.

We first clarify that defendant claims that his right *not* to testify was violated. In contrast, *Dredge* and *Powers* involved the right to

testify. The State argues that because a different right is involved, *Dredge* (and *Powers*) is inapplicable. We disagree. The Supreme Court stated over 30 years ago: "Every criminal defendant is privileged to testify in his own defense, *or to refuse to do so*." (Emphasis added.) *Harris v. New York*, 401 U.S. 222, 225, 28 L. Ed. 2d 1, 4, 91 S. Ct. 643, 645 (1971). The right not to testify is guaranteed by the fifth amendment: " '[The Fifth Amendment's privilege against self-incrimination] is fulfilled only when an accused is guaranteed the right "to remain silent unless he chooses to speak in the unfettered exercise of his own will." . . . The choice of whether to testify in one's own defense . . . is an exercise of the constitutional privilege.' " *Rock v. Arkansas*, 483 U.S. 44, 53, 97 L. Ed. 2d 37, 47, 107 S. Ct. 2704, 2710 (1987), quoting *Harris*, 401 U.S. at 230, 28 L. Ed. 2d at 7, 91 S. Ct. at 648 (Brennan, J., dissenting, joined by Douglas and Marshall, JJ.), quoting *Malloy v. Hogan*, 378 U.S. 1, 8, 12 L. Ed. 2d 653, 659, 84 S. Ct. 1489, 1493 (1964). The right to testify is "a necessary corollary to the Fifth Amendment's guarantee against compelled testimony." *Rock*, 483 U.S. at 52, 97 L. Ed. 2d at 47, 107 S. Ct. at 2709.

As previously noted, defendant does not claim that he was compelled by the State to testify as a witness in his own behalf. Rather, defendant frames the issue on appeal as the right to *choose* whether to testify in his own behalf and claims that his attorney deprived him of that choice. Our supreme court expressly recognized that the right involved is fundamental:

"A defendant's right to testify at trial is a fundamental constitutional right, as is his or her right to choose not to testify. [Citation.] It is now generally recognized that the decision whether to testify ultimately rests with the defendant. [Citations.] Therefore, it 'is not one of those matters which is considered a strategic or tactical decision best left to trial counsel.' " *People v. Madej*, 177 Ill. 2d 116, 145-46, 685 N.E.2d 908, 923 (1997), quoting *People v. Seaberg*, 262 Ill. App. 3d 79, 83, 635 N.E.2d 126, 129 (1994).

Having established that the right to choose whether to testify in one's own behalf is fundamental, the next question is what action must be taken by the trial court and a defendant's counsel to protect that right and what is the remedy when that right is violated. One approach places the burden of protecting the right to testify on the trial courts. This approach would employ the procedural safeguard of an on-the-record colloquy between the trial judge and the defendant to ensure that the waiver of the right is both knowing and intelligent. See *DeLuca v. Lord*, 858 F. Supp. 1330, 1355 (S.D.N.Y. 1994). We note that this approach has been expressly rejected by our supreme court:

"[W]e join the majority of states in concluding that the trial court is not required to advise a defendant of his right to testify, to inquire whether he knowingly and intelligently waived that right, or to set of record defendant's decision on this matter." *People v. Smith*, 176 Ill. 2d 217, 235, 680 N.E.2d 291, 303 (1997).

In *Smith*, our supreme court was guided by and adopted the Ninth Circuit's approach in *United States v. Martinez*, 883 F.2d 750 (9th Cir. 1989), *vacated on other grounds*, 928 F.2d 1470 (9th Cir. 1991). In *Martinez*, the court, in addition to discussing safeguarding of the right to testify, specifically addressed the right not to testify:

"The right not to testify is among the fundamental and personal rights recognized by the Constitution [citation]. If anything, one would expect the right not to testify to be more zealously guarded than the right to testify. An uninformed defendant probably expects to testify and may be unaware how strongly the Constitution protects his right not to testify. Yet the trial court has no duty to make a *sua sponte* inquiry to advise the defendant of his right not to testify and to ensure that its waiver was knowing and intelligent. Rather, the defendant by taking the stand waives this significant right even though the record gives no explicit assurance that this waiver was knowing and intelligent. [Citation.]

The court has no obligation to inquire into whether the defendant knowingly and intelligently waived the right not to testify inherent in the privilege against compelled self-incrimination. [Citation.] It is primarily the responsibility of counsel, not the judge, to advise a defendant on whether or not to testify, and the tactical advantages and disadvantages of each choice. For the court to discuss the choice with the defendant would intrude into the attorney-client relationship protected by the sixth amendment. [Citation.]

***

The most frequently given reason is that the decision is a matter of trial strategy between the defendant and counsel; the court should not interfere. [Citation.]

There is also a danger that the judge will appear to encourage the defendant to invoke or to waive this right. [Citation.] This danger is of great significance because the right not to testify counterpoises the right to testify, and the exercise of one is the waiver of the other." *Martinez*, 883 F.2d at 756-57.

For the reasons articulated in *Martinez*[3] (see *Smith*, 176 Ill. 2d at 235, 680 N.E.2d at 303), our supreme court places the burden of

---

[3]These reasons are:

"First, the right to testify is seen as the kind of right that must be asserted in order to be recognized. [Citation.] Second, it is important that the decision to testify be made at the time of trial and that the

safeguarding a defendant's right to choose whether to testify on the defendant's counsel (see *Smith*, 176 Ill. 2d at 235-36, 680 N.E.2d at 303; *Madej*, 177 Ill. 2d at 144-47, 685 N.E.2d at 922-23). Accordingly, where, as here, a defendant alleges in a postconviction petition that his counsel told him he had to testify and never explained to him that he had the right not to testify, the inquiry into the merit of the defendant's claim is under the *Strickland* framework. *Madej*, 177 Ill. 2d at 146, 685 N.E.2d at 923. Notwithstanding its characterization of a defendant's right to choose whether to testify as a fundamental right, our supreme court nevertheless requires that a defendant satisfy the prejudice component of the *Strickland* analysis even where, as here, the defendant claims that his counsel unilaterally required him to testify. *Madej*, 177 Ill. 2d at 146, 685 N.E.2d at 923. Moreover, as was made clear in *People v. Albanese*, 104 Ill. 2d 504, 527, 473 N.E.2d 1246, 1256 (1984), where the ineffectiveness of counsel is subject to a two-pronged *Strickland* analysis, once it is clear that no prejudice is established, the examination of the first prong of the *Strickland* test, namely, whether the performance of the counsel was deficient, is not required. " 'If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, \*\*\* that course should be followed.' " *Albanese*, 104 Ill. 2d at 527, 473 N.E.2d at 1256, quoting *Strickland*, 466 U.S. at 697, 80 L. Ed. 2d at 699, 104 S. Ct. at 2069-70.

To show prejudice, a defendant must establish a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068. In this case, the State argues that defendant cannot show that he was prejudiced by taking the stand and testifying since the evidence of his

failure to testify not be raised as an afterthought after conviction. [Citation.] Third, by advising the defendant of his right *to* testify, the court could influence the defendant to waive his right *not to* testify, 'thus threatening the exercise of this other, converse, constitutionally explicit and more fragile right.' [Citation.] Fourth, a court so advising a defendant might improperly intrude on the attorney-client relation, protected by the Sixth Amendment. [Citation.] Fifth, there is danger that the judge's admonition would introduce error into the trial. [Citation.] Sixth, it is hard to say when the judge should appropriately advise the defendant—the judge does not know the defendant is not testifying until the defense rests, not an opportune moment to conduct a colloquy. [Citation.] Seventh, the judge should not interfere with defense strategy. [Citation.]" (Emphasis in original.) *Martinez*, 883 F.2d at 760.

guilt was overwhelming. We agree. Defendant's theory of the case was that he was not aware of what was going to happen in the early hours of June 25, 1998, nor did he know that Anthony Clark had a gun. Defense counsel further alleged that defendant spoke to the victims to make sure that he himself was not being threatened in any way. However, the prosecution's witnesses directly contradicted defendant's theory of the case. Three surviving victims, Kowalski, El-Helo and De-Clet, were able to place defendant at the scene of the shooting. All three of them picked defendant out of a lineup while he was in custody. All three identified defendant in court as being among a group of gang members, one of whom fired a fatal shot at their friend. Their testimony was clear, consistent, and unimpeached.

Equally damaging to defendant was the confession he gave to ASA Kerbis. In it, he admitted to formulating a plan with three other gang members to get a gun and search out some members of the rival street gang to shoot and kill. Defendant stated that he asked Clark for a gun, but Clark refused to give it to him. Defendant even told ASA Kerbis that had he had a gun, he would have made sure that they shot a rival gang member and not an innocent bystander.

At trial, defendant did not introduce any witnesses, other than himself, in support of his theory of the case. We agree with the State that in light of the testimony of the three eyewitnesses and defendant's own confession, there can be no question as to defendant's guilt. Therefore, defendant cannot satisfy the prejudice prong of the *Strickland* test.

For the foregoing reasons, we find that the trial court did not err in summarily dismissing defendant's postconviction petition. The judgment of the trial court is affirmed.

Affirmed.

McNULTY and McBRIDE, JJ., concur.